## WILLIAM HENRY HUTCHINSON *v.* STATE OF MARYLAND

[No. 217, Initial Term, 1967.]

*Decided June 2, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and O'DONNELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Benjamin L. Brown* for appellant.

*Edward L. Blanton, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Raymond Faby, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

Appellant was convicted in the Criminal Court of Baltimore, in a non-jury trial before Judge Joseph L. Carter, of assault with intent to murder and assault. His Motion for New Trial was denied and he appeals from his sentence to the Maryland Penitentiary, contending: (1) that the evidence was insufficient to sustain his conviction, (2) that it was error for the trial court to deny his Motion to Suppress Evidence, and (3) that his Motion to Dismiss the Indictment should have been granted.

## (1)

At the close of the evidence offered by the State, Appellant's Motion for Judgment of Acquittal was denied. Appellant testified himself and by so doing he withdrew his Motion, Maryland Rule 755(b). At the conclusion of all the evidence, his renewed Motion for Judgment of Acquittal was denied.

Where an action has been tried by the lower court without a jury, this Court, upon appeal will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless it was clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses, Maryland Rule 1086. It is our function merely to determine whether there was evidence, or proper inferences from the evidence, upon which the trial court could find the defendant guilty. *Holtman v. State,* 219 Md. 512, 515, 150 A. 2d 223 (1959).

It is the function of this Court in reviewing the sufficiency of the evidence on an appeal from a conviction in a non-jury criminal case to determine whether the court below had sufficient evidence from which it could be fairly convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Gibson v. State,* 238 Md. 414, 209 A. 2d 242 (1965); *Johnson & Carroll v. State,* 238 Md. 643, 644, 210 A. 2d 399 (1965).

Mildred Colclaugh, who had known appellant for five years, who had befriended him while he was confined "at Jessups and at Springfield," and who had given him the occupancy of a bedroom in the premises occupied by her and her father at 161 W. Henrietta Street, testified that at approximately 11:30 p.m. on March 4, 1965, after she came off duty as a supervising nurse at the Carver Nursing Home, crossed Pennsylvania Avenue and as she was about to enter her parked automobile, the appellant, hidden on the opposite side of the automobile, asked her "to take him to south Baltimore." When she stated that she was not going to south Baltimore, he replied, "You are too damn smart" and fired a shot over the roof of the car and over her head. She began to run back toward the Nursing Home; he pursued her, caught her in the

street, put a pistol to her ear, and said "If you move, I'll blow your damn brains out." He struck her on the right side of her head with the pistol and dragged her a distance of about 20 feet into an alleyway in the rear of the parked car; as she attempted to get up, he began shooting again and one bullet struck her in the leg. He put the pistol to her forehead, pulled the trigger, the gun "clicked" and then he beat her in the face with the pistol, shattering her jawbone. He grabbed her pocketbook and escaped. Personnel from the Nursing Home, coming to her assistance, called the Police. She was hospitalized for eleven days, sustained nerve damage to her leg, has a permanent wire in her jaw and was unable to work for approximately eight months.

She denied that the appellant was her boy-friend or paramour, although she acknowledged she had befriended appellant and had given him bedroom space in her home. She was positive of her identification of him.

Her father, Walter Reddick, 70 years of age, testified that he went to University Hospital on March 5, 1965, to visit his daughter; that the appellant, known to him as "Pie" came to the hospital and told him that "He had a gun on him then and he had shot her (his daughter) once."

Appellant, having freely elected to testify in his own behalf, denied that he had shot her, denied that he had a gun, but acknowledged that he had been in the vicinity of the shooting that afternoon when he visited the Frolic Bar and the "Moonglow" on Pennsylvania Avenue, several blocks from the shooting scene.

He further testified that several days prior to March 4th, he had a "squabble" with the prosecutrix because he was not going to be her "part-time man;" that she had a boyfriend who was a Venezuelan seaman and that he had insisted that she make an election as to whether or not he was to be her "boyfriend" or whether when the seaman returned to Baltimore, the romance between the parties would be renewed.

On cross-examination, he acknowledged convictions for forgery, unauthorized use of a motor vehicle, two convictions for larceny and three convictions for assault — two of which were upon women.

Judge Carter, the trial Judge, in his oral opinion on the facts, stated that "As between the prosecuting witness and the defendant, I am perfectly frank to say that I accept and believe the testimony of the prosecuting witness." He stated further, "Somebody shot the complaining witness, shot at her and actually shot her and not only that, but beat her up rather badly * * * she was shot in the leg, somebody did this to her; she says it was the defendant and certainly she knows him and I haven't heard any valid reason why she would be not telling the truth about it, she certainly makes a good impression as far as I am concerned, (does) not take a vehement or violent attitude; she took the witness stand and told the plain and straight-forward story that I believe." The Judge stated further "* * * and then there is this corroboration produced by the State. Here again, do you believe it or not? I do believe it. Her father, who visited the next day, says (that) the defendant told him, while in the hospital to see her, that he had shot her once and he says the defendant then said that he had a gun." The Judge concluded that upon all the testimony in the case, he could arrive at only one conclusion beyond a reasonable doubt and that was that the defendant was guilty of the crime of which he is charged.

The matter of credibility of witnesses is a primary one for the trier of facts to determine. *Hill v. State,* 231 Md. 458, 462, 190 A. 2d 795 (1963), cert. denied 375 U. S. 861, 84 S. Ct. 127, 11 L. Ed. 2d 88; and *Johnson & Carroll v. State, supra.*

The identification by a single eyewitness if believed, is sufficient to support a conviction. *Hammond v. State,* 241 Md. 733, 217 A. 2d 569 (1966); *Huelin v. State,* 234 Md. 213, 198 A. 2d 302 (1964); and *Bailey v. State,* 226 Md. 353, 173 A. 2d 732 (1961).

In *Bird v. State,* 231 Md. 432, 190 A. 2d 804 (1963), the Court of Appeals, concerning the elements of the crime of assault with intent to murder, said at p. 436:

> "The crime of assault with intent to murder is a statutory offense. See Code (1957), Art. 27, Sec. 12. And although the statutory provision does not define the elements of the crime, it is necessary that there be proof of an assault and that it was with an intent to murder. *Webb v. State,* 201 Md. 158, 93 A. 2d 80

(1952). Intent involves the element of malice and must be such as would lead to a charge of murder if death should ensue. *Marks v. State,* 230 Md. 108, 185 A. 2d 909 (1962). * * * The specific intent to take life need not be shown if the assault was committed under such circumstances that, if death had ensued, the crime would have been murder in either the first or second degree. *Wimbush v. State, supra; Hall v. State,* 213 Md. 369, 131 A. 2d 710 (1957); *Webb v. State, supra."*

In *German v. State,* 231 Md. 111, 188 A. 2d 691 (1963), the Court of Appeals said at p. 112:

"We think it is obvious that there was ample evidence from which the trial court could find malice and a specific intent to murder in this assault by appellant. *Beall v. State,* 203 Md. 380. The trial court was not required to believe appellant's statement that he fired the shot when Brantley put his hand in his pocket as if to pull a gun (which, as well as the possession of a gun, was denied by Brantley). Certainly we cannot say the trial court was clearly erroneous in finding the verdict."

From what the trial Judge found to be the credible testimony, we think that there was ample evidence from which he could find that the assault was committed under such circumstances that the malice necessary for the intent to murder was present. Not only did appellant fire a shot over the head of the prosecutrix, but he shot her in the leg, pulled the trigger on the pistol pointed at her forehead, "pistol-whipped" her, and further told her that "I'll blow your damn brains out." See *Morrison v. State,* 234 Md. 87, 88, 198 A. 2d 246 (1964); *Ferrell v. State,* 234 Md. 355, 356, 199 A. 2d 362 (1964); *Shenberger v. State,* 234 Md. 363, 365, 199 A. 2d 233 (1964); and *Wilt v. State,* 234 Md. 365, 199 A. 2d 232 (1964).

We find that there was ample evidence before the court to sustain a finding of guilty and that the trial court was clearly correct in denying appellant's Motion for Judgment of Acquittal.

## (2)

Although no formal Motion to Suppress Evidence appears to have been filed in the case (Maryland Rule 725(b)), the appellant at the beginning of his trial, moved to quash the Indictment because of an alleged illegal arrest. The trial court deferred ruling on his motion (Maryland Rule 725(d)), and received all the evidence subject to exception. At the conclusion of all the testimony, the motion was denied.

Appellant here contends that having challenged the legality of his arrest the State had the burden of establishing the existence of "probable cause" necessary to justify his arrest. Appellee concedes that if the State, in the trial of a case, intends to offer evidence seized from a defendant as an incident to his arrest, and the defendant has challenged the legality of that arrest, it is incumbent upon the State to establish the legality of the arrest. Determination of the admissibility of evidence seized incident to an arrest is dependent upon the lawfulness of the arrest. *Farrow v. State,* 233 Md. 526, 533, 197 A. 2d 434 (1964). Such a question may be raised before trial by a motion to exclude any evidence claimed to have been improperly obtained. Maryland Rule 725(b) and (c) ; *Rizzo v. State,* 201 Md. 206, 93 A. 2d 280 (1952).

Although the appellant testified that he was arrested at University Hospital on March 5, 1965—after having there conversed with Walter Reddick—the State did not produce any evidence from the arresting officer to show the circumstances of the arrest, but neither did the State, during the trial, offer any evidence obtained from the appellant at the time of his arrest, nor any statement made by him subsequent to his arrest. Indeed, it was not shown whether the appellant was arrested upon a warrant or, in the absence of a warrant, upon "probable cause" to believe that he had committed a felony.

Even assuming however he was illegally arrested, this contention here is of no avail, since no "fruits" of the arrest were received into evidence against him. The illegality of his arrest, if illegality there was, is immaterial. *Wilkins v. State,* 237 Md. 617, 618, 205 A. 2d 593 (1964).

See also, *Ogle v. Warden, Maryland Penitentiary,* 236 Md. 425, 204 A. 2d 179 (1964) ; *Hornes v. Warden, Maryland*

*House of Correction,* 235 Md. 673, 202 A. 2d 643 (1964);
*Brown v. Warden, Maryland House of Correction,* 240 Md.
710, 213 A. 2d 750 (1965); and *Baldwin v. Warden, Maryland Penitentiary,* 243 Md. 326, 328, 221 A. 2d 73 (1966).

The fact that appellant's arrest may have been illegal—or
not shown to be legal—would not, in and of itself, vitiate his
trial. In *Matthews v. State,* 237 Md. 384, 206 A. 2d 714
(1965), the court said at p. 387:

> "The simple answer to this result contended for
> is that the sole fact that an arrest may have been un-
> lawful does not affect the jurisdiction of the court, is
> not a ground for quashing the indictment and does
> not preclude trial and conviction for the offense. *Jackson v. Warden,* 235 Md. 689, 690, 202 A. 2d 757;
> *Ledbetter v. Warden,* 234 Md. 643, 644, 645, 200 A.
> 2d 81; *Piles v. State,* 233 Md. 487, 489, 197 A. 2d 238;
> *Oden v. State,* 222 Md. 325, 328, 159 A. 2d 867;
> *Wright v. State,* 222 Md. 242, 245, 159 A. 2d 636."

Since no evidence was offered in the trial of anything seized
from the appellant at the time of his arrest, the trial court
was clearly correct in denying his Motion to Suppress
Evidence.

### (3)

The record discloses that the appellant was previously tried
for these offenses but that a Motion for New Trial was pending
when the Court of Appeals decided *Schowgurow v. State,* 240
Md. 121, 213 A. 2d 475 (1965); *State v. Madison,* 240 Md.
265, 213 A. 2d 880 (1965); *Smith v. State,* 240 Md. 464, 214
A. 2d 563 (1965): and *Hays & Wainwright v. State,* 240 Md.
482, 214 A. 2d 573 (1965), and that he elected under the
holdings in *Smith* and *Hays & Wainwright* to set aside and
dismiss the Indictment upon which he had been tried in 1965.
He was re-presented and re-indicted by a new Grand Jury on
April 7, 1966. Prior to his trial he filed a Motion to Dismiss his Indictment in which he alleged that the "Indictment
on which he was now charged was far more unconstitutional
than the previous one;" he contended that although the Court
of Appeals in *Schowgurow* had declared Article 36 of the
Maryland Declaration of Rights to be unconstitutional the
decision of the Court of Appeals in that case "did not remove

or amend the unconstitutional provisions from the Maryland Constitution;" that it still literally remained a part of the Maryland Constitution and could not be removed or amended except upon the action of the Legislature and the approval of the electorate.

At the hearing on his Motion, he argued, by counsel, that before he could be legally indicted the unconstitutional provision (Article 36) must be deleted (by amendment) and that the Court of Appeals could not amend the Constitution. Here he alleges that the action of the trial court in denying his Motion was error.

In *Schowgurow,* the Court of Appeals held that the provisions of Article 36 of the Maryland Declaration of Rights requiring a demonstration of the belief in God as a qualification for service as a Grand or Petit juror violated the Fourteenth Amendment to the United States Constitution under the decision of the United States Supreme Court in *Torcaso v. Watkins,* 367 U. S. 488 (1961) reversing *Torcaso v. Watkins,* 223 Md. 49, 162 A. 2d 438 (1960).

Article 2 of the Maryland Declaration of Rights declares the Constitution, Laws and Treaties of the United States to be the supreme law of the State. It reads:

> "The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding."

The holdings by the United States Supreme Court in *Torcaso* and by the Court of Appeals in *Schowgurow* gave recognition to Article 2 of the Maryland Declaration of Rights.

Article IV, Sec. 1 of the Maryland Constitution vests the judicial power of the State in the judiciary.

In *Maryland Committee for Fair Representation v. Tawes,* 228 Md. 412, 180 A. 2d 656 (1962) the court said, at p. 417:

"It needs no citation of authority to state that if any portion of the system of Maryland's government infringes upon the Federal Constitution, which is the supreme law of our land, it must yield to the provisions of the Federal Constitution. And if it does infringe upon the Federal Constitution, it is also invalid under our own constitution (Article 2, Maryland Declaration of Rights) * * *."

The court further stated at p. 425-6:

"* * * Section 1 of Article IV of the Maryland Constitution vests the judicial power of the State in the Judiciary, and this encompasses *all* the judicial power of the State. *Magruder v. Swann*, 25 Md. 173. That the Judiciary is the ultimate authority to determine whether constitutional limitations have been transcended is a proposition that has been so long established and frequently applied it can no longer be seriously challenged. Chancellor Kent states that in *Marbury v. Madison*, 1 Cranch 137, 'The power and duty of the judiciary to disregard an unconstitutional act of Congress, or of any state legislature, were declared (by Chief Justice Marshall), in an argument approaching to the precision and certainty of a mathematical demonstration.' 1 Kent's Commentaries (14th ed.) p. 609. For two of the cases in which this Court decided whether provisions of the Maryland Constitution violated the Federal Constitution, see *Anderson v. Baker,* 23 Md. 531, and *Torcaso v. Watkins,* 223 Md. 49, 162 A. 2d 438, reversed 367 U. S. 488."

Even though Article 36 of the Maryland Declaration of Rights is still literally a part of the Declaration of Rights, it was found to be in contravention of the Fourteenth Amendment to the United States Constitution and was thus held in *Schowgurow* to be invalid. Article 36, insofar as it pertains to a qualification for service on a Grand Jury, has been rendered null and void.

This contention by appellant is utterly without merit and the trial court was correct in denying his Motion to Dismiss the Indictment.

*Judgment affirmed.*