## RONALD WAYNE, a/k/a RONALD ELMER THOMAS *v.* STATE OF MARYLAND

[No. 436, September Term, 1968.]

*Decided October 15, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James F. Garrity* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *Julius A. Jodlbauer, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

THOMPSON, J., delivered the majority opinion of the Court. ORTH, J., dissents. Dissenting opinion by ORTH, J., at page 8 *infra.*

Ronald Wayne, a/k/a Ronald Elmer Thomas, the appellant, originally pleaded guilty to grand larceny before Judge Edward D. E. Rollins, who sentenced him to a term of five years. This conviction was reversed by this Court because the plea of guilty was conditional and should not have been accepted by the court. *Wayne v. State,* 4 Md. App. 424, 243 A. 2d 19. Upon remand, Wayne was convicted by a jury, Judge H. Kenneth Mackey presiding, who imposed an indeterminate sentence, not to exceed six years.

Wayne complains: (1) The longer sentence at his second trial was a violation of his federal constitutional right to due process of law. (2) The evidence was insufficient to convict. (3) The arrest and search were illegal. (4) Trial counsel was incompetent.

On September 25, 1967, three men entered a jewelry store in Elkton, Maryland. While the store clerk showed some birthstone rings to one of the men, she observed the other two go to another showcase and remove seven boxes containing a total of 14 diamond rings. When the clerk challenged them, they denied taking the rings. The men left the store, but the clerk watched them go into an alley across the street where they were also observed by a woman in one of the offices that overlooked the alley. The woman and the clerk identified Wayne as one of the three men.

In the meantime, the police were called and told of the theft and the direction taken by the thieves. Officer Hewes of the Elkton Police Department, responding to

the call, went to the alley where he apprehended the three men. Hewes took all three back to the jewelry store, advised them of their rights, and searched them but found nothing. The officer later found the rings in the alley.

Wayne's first contention that it was constitutionally improper to sentence him to a longer term of imprisonment at a second trial after his first conviction had been reversed, would seem to be sustained by *North Carolina v. Pearce,* 395 U.S. 711, 89 Sup.Ct. 2072, 23 L.Ed.2d 656 (1969) which held there was a denial of due process when a trial judge at a second trial gave a longer sentence unless such longer sentence was based on factors which arose subsequent to the first trial. The court held further such factors must appear affirmatively as part of the record so that constitutional legitimacy of the increased sentence can be fully reviewed on appeal. There is nothing in the present record to indicate the second sentence was based on subsequent conduct; on the contrary, the trial judge stated he was imposing the same sentence he would have imposed had he been the original trial judge.

The crucial issue in this contention is whether the holding of *Pearce* should be applied retroactively to include Wayne and others similarly situated. It is noted that the retroactivity of *Pearce* has not been decided by the Supreme Court, although the point has been scheduled for argument. See *Moon v. Maryland,* 395 U.S. 975, 89 Sup. Ct. 2135, 23 L.Ed.2d 764 (1969). In view of the absence of a decision by the Supreme Court and in view of the settled Maryland law prior to *Pearce* that an increased sentence on retrial was within the discretion of the second trial judge, *Moon v. State,* 250 Md. 468, 243 A. 2d 564, we will reject the contention and hold *Pearce* not to be retroactive. We point out, however, Wayne's right to petition for post conviction relief under Maryland Code, Article 27, Section 645A (d) in the event that the Supreme Court should in the future apply *Pearce* retroactively. In addition, we note that even before *Pearce,*

Wayne was protected from judicial impropriety in sentencing by Maryland Rule 762 (review of sentence) and our previous holdings that a sentence cannot be influenced by improper motives, e.g. *Washington v. State,* 2 Md. App. 633, 236 A. 2d 32, *Baker v. State,* 3 Md. App. 251, 238 A. 2d 561.

The remaining contentions require little discussion. The testimony of the jewelry clerk who saw Wayne take the rings was itself sufficient evidence to support the conviction. See *Reed v. State,* 1 Md. App. 662, 232 A. 2d 550. Assuming, but not deciding, the arrest and subsequent search were illegal, Wayne is entitled to no relief. Neither the search nor the arrest produced any evidence and an illegal arrest does not, of itself, vitiate a subsequent conviction. *Hutchinson v. State,* 1 Md. App. 362, 230 A. 2d 352. Compare *Davis v. Mississippi,* 395 U. S. 949, 89 Sup. Ct. 1394, 22 L.Ed.2d 676. The question as to competency of counsel was not raised below and is not before us. Maryland Rule 1085.

*Judgment affirmed.*

ORTH, J., dissenting:

Once again the Supreme Court has rendered a decision which affects State prosecutions in criminal causes without providing guidance as to its retroactive applicability. And once again we are obliged to resolve the question so we may make proper disposition of a case before us.[1]

The appellant, whose conviction of grand larceny upon a plea of guilty was reversed by this Court, *Wayne v. State,* 4 Md. App. 424, was again convicted of the offense on retrial. He claims that he received a more se-

---

1. For example, in *Silverberg v. Warden,* 7 Md. App. 657, we were faced with the retroactivity *vel non* of *Boykin v. State of Alabama,* 395 U. S. 238 (1969), and decided that it should not be applied to guilty pleas accepted prior to the date of the *Boykin* decision. And the question of the retroactivity of *Chimel v. State of California,* 395 U. S. 752 (1969), was posed in *Scott v. State,* 7 Md. App. 505. We decided that *Chimel* was to be applied only to cases in which the prosecution seeks to introduce the fruits of a search conducted after the date of the *Chimel* decision.

vere sentence on his conviction on retrial and contends that this was a violation of due process of law. While his appeal from the second conviction was pending before this Court, the Supreme Court decided *State of North Carolina v. Pearce,* 89 Sup. Ct. 2072 on 23 June 1969 and the question presented by the appellant was before the Court in that case. To the majority the appellant's contention "would seem to be sustained" by *Pearce,* but they find no need to decide whether it was or not. Rather, upon a recognition that "the crucial issue in this contention is whether the holding of *Pearce* should be applied retroactively," they hold *Pearce* not to be retroactive "in view of the absence of a decision by the Supreme Court" as to its retroactivity, and reject the contention "in view of the settled Maryland law prior to *Pearce* that an increased sentence on retrial was within the discretion of the second trial judge," citing *Moon v. State,* 250 Md. 468. They point out that the question of the retroactivity of *Pearce* has been scheduled for argument before the Supreme Court, *Moon v. Maryland,* 89 Sup. Ct. 2135, and in the event it decides that *Pearce* has retroactive application, the appellant may seek relief under post conviction procedures. It notes in addition that the appellant could have sought review of his sentence under Md. Rule 762 and was protected by our previous holdings that a sentence cannot be influenced by improper motives.

First, it is obvious that the appellant received a sentence upon his conviction on retrial more severe than his sentence upon conviction at the original trial. He was sentenced to 5 years on the first conviction and to "an indeterminate period of time not to exceed 6 years accounting from September 25, 1967," the date of the commission of the crime, on his second conviction.[2] The sentencing judge on retrial noted for the record that he was

2. The appellant's first trial was on a criminal information filed upon petition by him under Md. Rule 709. On reversal of the judgment by this Court, *Wayne v. State,* 4 Md. App. 424, he was indicted and the conviction on retrial was on that indictment.

aware that the original sentence was 5 years. He believed, however, under the authority of *Moon v. State,* 1 Md. App. 569, that a sentence may be increased on retrial.[3]

Second, I find it clear under *Pearce* that the imposition of the more severe sentence on retrial here was im-

3. The Court of Appeals reviewed our decision in *Moon* on grant of certiorari and affirmed the judgment. *Moon v. State,* 250 Md. 468. But its decision was founded not only on a holding that there was no constitutional bar to the giving of the increased sentence on retrial (the first trial was a nullity by reason of Moon's election to void the indictment under *Schowgurow v. State,* 240 Md. 121) but also on a finding that the record supported factually the permissibility and propriety of the increased sentence. The Court said, at 481:

"There is no indication that Judge Pugh increased Moon's sentence because he had elected to have a new trial or for any other unworthy or improper motive. There is substantial indication that the second sentence reflected the extent to which the facts, revealed at the second trial but not at the first, put Moon in a bad light, and showed him to be a greater threat to society than had first been thought. At the first trial the only conviction was for armed robbery. At the second trial, Moon was convicted of larceny and assault with intent to murder also. There was medical testimony at the second trial, not given at the first, of the shocking physical beating of the victim and its disastrous effects. Judge Pugh could have reimposed the original twelve-year sentence and given additional ten-year consecutive sentences for larceny and assault, or a total of thirty-two years, and Moon would not have had even an ostensible basis to complain. Instead, Judge Pugh chose to give twenty years for armed robbery and to suspend sentence on the other convictions. A sentence of twenty years for armed robbery is not only authorized by statute but is not an unusual, shocking or improperly punitive sentence."

There is the implication that more than the naked power and the absence of improper motives is required to increase a sentence on retrial. In the instant case, as in *Moon,* there is no indication that the judge on retrial increased the sentence because a new trial was obtained at the appellant's behest or for any other motive which can be found to be unworthy or improper. But unlike *Moon,* here the appellant was convicted only of the crime of which he was convicted at the first trial and the record does not reflect any facts, revealed at the second trial but not at the first, which put the appellant in a bad light and showed him to be a greater threat to society than had been at first thought. I do not think that *Moon,* as decided by the Court of Appeals, is dispositive of the contention here, and in the light of *Moon,* I am not sure that prior decisions in this jurisdiction, to the extent that they go only to the lack of a constitutional bar, are controlling.

proper in the circumstances. The question in *Pearce* and in the other case decided in that opinion, *Warden v. Rice,* was: "When at the behest of the defendant a criminal conviction has been set aside and a new trial ordered, to what extent does the Constitution limit the imposition of a harsher sentence after conviction upon retrial?" 89 Sup. Ct. at 2074. The Court considered the problem as involving two related but analytically separate issues: (1) the constitutional limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial; (2) the more limited question whether, in computing the new sentence, the Constitution requires that credit must be given for that part of the original sentence already served. at 2075-2076. Considering the more limited issue first, the Court held: "[T]he constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." [4] at 2077.

Considering the broader issue, the Court held that there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial.[5] This hold-

---

4. The rationale of the holding was that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. *Benton v. Maryland,* 89 Sup. Ct. 2089, (decided the same day as *Pearce*). That guarantee consists of three separate constitutional protections. It protects: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and (3) against multiple punishments for the same offense. The third protection compels the holding. Without credit for punishment exacted the defendant would receive multiple punishments. at 2076-2077. The holding applies to fines as well as imprisonment. Note 12, at 2077.

5. The precise holding was: "[N]either the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction." at 2079. The rationale of this holding was that long-established constitutional doctrine makes clear that, beyond credit for punishment exacted, the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed on reconviction because double jeopardy does not preclude the State's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction. Whether set aside on collateral rather

ing, however, did not end the inquiry. Even though there is no *absolute* constitutional bar, there is the impact of the Due Process Clause of the Fourteenth Amendment. The Court concluded, at 2081:

> "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring. after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." [6]

In the instant case the record affirmatively shows the reason why the harsher sentence was imposed. But it is clear that it was not the reason authorized by *Pearce*. After the sentencing judge remarked that he was aware that he imposed a more severe sentence he said: "The court is frank to say, had this member of the Court been

---

than direct attack is irrelevant. The rationale of permitting such a retrial rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. at 2077-2078. The Court rejected the applicability of the Equal Protection Clause. It found, after discussion: "To fit the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished." at 2079.

6. The rationale of this conclusion was that even though the States are not required to establish avenues of appellate review, it is fundamental that once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. Due process of law requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. Since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. at 2080. The requirements with respect to the imposition of a more severe sentence are to assure the absence of such a motivation.

sitting at the original trial, that in its opinion the sentence which I have passed today would have been warranted initially. It was a fact that this case was heard initially by another member of the Court." Thus the reason for the increased sentence was obviously not "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," but rather upon the subjective feeling of the judge that had he presided at the original trial, he would have then imposed it.

If *Pearce* is applicable to the instant case, the sentence imposed on retrial was improper.[7]

Third, I do not think that the question of the retroactivity of *Pearce* should be disposed of in the cavalier fashion in which the majority disposed of it. It does not follow, that because the Supreme Court has not yet decided the question, we should hold *Pearce* as not retroactive. I do not find persuasive that the Supreme Court may soon speak the final word. Nor am I impressed by the fact that the appellant could have sought a review of his sentence, was protected against a sentence dictated by unworthy motives and may at some future time collaterally attack the judgment. We have no less an obligation to the appellant here to determine the question on full and adequate consideration than we had to the appellants in *Silverberg* and *Scott* when we decided the retroactivity of *Boykin* and *Chimel*. The question of the retroactivity of *Pearce* is squarely before us, it is necessary for a proper determination of the contention raised, and I feel that it should be decided only after full discussion.[8]

---

7. I do not think that the more limited question determined by *Pearce* is here applicable. Although the judge on retrial did not mention credit for punishment exacted, it would appear that, by accounting the sentence from the date of the crime, the appellant received such credit. We note, however, that it was stated in *Pearce* that credit for time served must "include the time credited during such service of the first prison sentence for good behavior, etc." note 13, at 2077.

8. At the time the appellant filed his brief *Pearce* had not been

It was established in *Linkletter v. Walker*, 381 U. S. 618, 629 that "the Constitution neither prohibits nor requires retrospective effect" for decisions expounding new constitutional rules affecting criminal trials. Thereafter the Supreme Court viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. *Desist v. United States*, 89 S. Ct. 1030, 1033. These considerations were summarized in *Stovall v. Denno*, 388 U. S. 293, 297:

> "[T]he criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

I see a sound distinction between the purpose to be served by the requirements with regard to the imposition of a more severe sentence on retrial and the purpose to be served by rules requiring the exclusion of illegally seized evidence. "All of the cases * * * requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. * * * We cannot say that this purpose would be advanced by making the rule retrospective. * * * We further observe that, in contrast with decisions which have been accorded retroactive effect, 'there is no likelihood of unreliability or coercion present in a search and seizure case.'" *Linkletter v. Walker, supra,* at 637-639. On the other hand some constitutional rights are so fundamental to our system of justice—for example the assistance of counsel—that they must be given full retroactive application. A defendant's exercise of a right to appeal, once given him, must be free and unfettered, and "[d]ue process of law then requires that vindictiveness against a defendant for

---

decided. He stated, however, that he felt that when it was decided, the allegation that his sentence was improper as in violation of due process of law would be "vindicated." He was correct.

having successfully attacked his first conviction must play no part in the sentence he received after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." [9] *Pearce* at 2080. Thus the purpose of the requirements which must be observed to impose a more severe sentence on retrial is to leave a defendant free and unfettered to exercise his right to appeal by assuring the absence of a retaliatory motivation on the part of the sentencing judge. Unlike the exclusionary rules for illegal evidence, there is a possibility of coercion present and the fairness of the trial is involved. I think, as to the first criterion, that the purpose of the requirements enunciated in *Pearce* tends toward a retroactive application of them.

As to the second criterion, insofar as it may be applicable here, it can hardly be doubted that even before *Pearce*, it was a flagrant violation of due process of law for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside, whether it was set aside because of constitutional or nonconstitutional error. A court is without a right to put a price on an appeal. *Pearce,* at 2080. The requirements of *Pearce* are to assure that there is no price on appeal, even though unannounced. I do not believe that former reliance on a naked power to give a harsher sentence on retrial compels a holding that *Pearce* is not to be retroactive.

With regard to the third criterion, I do not feel that a retroactive application of the *Pearce* requirements

---

9. "The existence of a retaliatory motivation would, of course, be extremely difficult to prove in an individual case. But data have been collected to show that increased sentences on reconviction are far from rare." *Pearce,* note 20, at 2080.

would adversely affect the administration of justice to any substantial extent. The requirements would come into play only when a more severe sentence had been imposed on conviction after a retrial. I have no exact data, but as there must first be a reversal of the judgment entered on the first trial, then a grant of a new trial, then a conviction on retrial, then the imposition of a more severe sentence, I am confident that there will not be so many cases involved as to seriously affect the administration of justice. Further, the application of *Pearce,* which does not go to the conviction, but to the punishment, would in no event require a reversal of the conviction and a third trial on the merits.

I am constrained to conclude that the requirements to be observed in the imposition of a more severe sentence as set forth in *Pearce* should be given retroactive application.[10] *Pearce* would thus apply to the case before us and the sentence imposed must be held invalid.

As I concur in the opinion of the Court as to the other contentions presented, I would modify the judgment by remanding the case with direction to impose a lawful sentence. Md. Rule 1070.

---

10. As stated in note 7 *supra,* credit for time served is not involved in the instant case. However, for reasons comparable to those leading to the conclusion with respect to the requirements to be observed in the imposition of a harsher sentence on retrial, I think that the holding of *Pearce* as to credit for time served must also be given retroactive application. And I point out that there is an *absolute* constitutional requirement that such credit be given.