Dale Howard McCULLEY, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 56705.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1972.

Jimmie B. Trammell, Dexter, for movant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Movant-appellant Dale Howard McCulley appeals from the denial of his S.Ct. Rule 27.26, V.A.M.R., motion in which he sought to have vacated a sentence imposed on his plea of guilty to a charge of stealing over $50, a felony. Notice of appeal was filed prior to January 1, 1972, and, therefore, this court has jurisdiction. Art. V, § 3, Const. of Mo.1945, V.A.M.S.

On January 18, 1967, movant was charged by information filed in the Circuit Court of Stoddard County with stealing over $50. It alleged the offense to have been committed January 13, 1967, at which time movant was on parole from the Missouri Department of Corrections from a previously imposed five-year sentence. On January 19, 1967, movant pled guilty to the charge of stealing over $50 before Judge William H. Billings and received a sentence of two years in the Department of Corrections. Movant's parole was revoked and he was returned to the Department of Corrections to serve the remainder of the five-year sentence and the two-year sentence. The movant completed service of the remainder of the five-year sentence on September 25, 1967.

On December 1, 1967, the court permitted movant, on movant's motion under Rule 27.26, to withdraw the plea of guilty to stealing over $50 and vacated the two-year sentence, and set the cause for trial. Movant filed his application for disqualification of Judge Billings, which was sustained as a matter of course, and Judge Rex Henson was designated to try the case. On September 23, 1968, movant and his counsel appeared before Judge Henson and entered a plea of guilty to the charge. Movant made oral application for probation or parole (hereafter referred to as "parole"). Judge Henson deferred sentencing and ordered a presentence investigation report. On February 10, 1969, having received the report, Judge Henson sentenced movant to seven years in the Department of Corrections and immediately placed him on parole.

Movant had been at liberty on bond pending disposition of the stealing-over-$50 charge from about December 1, 1967, to date of sentencing, February 10, 1969, and thereafter remained at liberty on parole from Judge Henson until confined on January 2, 1970, for alleged parole violation. On March 11, 1970, movant and counsel appeared before Judge Henson and admitted that the parole violation charges were true. The parole was revoked and movant committed to the Department of Corrections to serve the seven-year sentence.

On April 9, 1970, movant filed the instant Rule 27.26 motion in the Circuit Court of Stoddard County contending that the seven-year sentence was invalid under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, and Patton v. North Carolina (4th Cir.) 381 F.2d 636. Movant also contended he was entitled to credit for all time served in confinement from the date the two-year sentence was imposed—January 19, 1967.

This motion was heard by Judge Billings. The court overruled the motion to vacate the seven-year sentence, denied credit for time served from January 19, 1967, to September 25, 1967, but allowed credit for time served under the two-year sentence between September 25, 1967, and December 1, 1967, amounting to sixty-six days in addition to jail time credit previously allowed by Judge Henson.

On this appeal movant contends that the seven-year sentence imposed on the second plea violated his rights under the double jeopardy and equal protection provisions of Amendments 5 and 14, United States Constitution, citing Patton v. North Carolina, supra, and in violation of his due process rights under Amendments 5 and 14, U.S.Const., citing North Carolina v. Pearce, supra.

■ Double Jeopardy and Equal Protection: Patton v. North Carolina, supra, was decided by the U. S. Court of Appeals Fourth Circuit, June 14, 1967. Patton contended that the sentencing court's action

in (1) failing to give credit for all time served under the original sentence and (2) imposing a longer sentence on retrial violated his due process and double jeopardy rights. In short, the court held that *either* failing to give credit for time served under the original sentence or imposing a longer sentence on retrial violated *both* the due process and double jeopardy provisions of Amendments 5 and 14 of the United States Constitution. The court, therefore, held that (1) the prisoner must be credited on the second sentence with all of the time served under the first sentence *and* (2) the second sentence cannot be longer than the first.

Pearce v. State of North Carolina (4th Cir.) 397 F.2d 253, was decided on June 19, 1968, following *Patton,* and affirmed the U. S. District Court in a *per curiam* opinion stating, "The action was taken on the authority of our decision in Patton v. State of North Carolina, 381 F.2d 636 (4 Cir. 1967), cert. den., North Carolina v. Patton, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed. 871 (1968)." The State of North Carolina then petitioned the United States Supreme Court for certiorari in *Pearce* which was granted, 393 U.S. 922, 89 S.Ct. 258, 21 L.Ed.2d 258. *Pearce* was consolidated with Simpson, Warden, v. Rice, and the two cases were decided in one opinion, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, hereafter referred to as North Carolina v. Pearce.

The United States Supreme Court held that the double jeopardy provisions of Amendments 5 and 14 guarantees against multiple punishment for the same offense and "absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." 89 S.Ct. at 2077.

Thus, to the extent that Patton v. North Carolina (4th Cir.), and Pearce v. North Carolina (4th Cir.), supra, held that the *double jeopardy* provisions of Amendments 5 and 14 of the U. S. Constitution require that full credit be given in imposing sentence upon a new conviction for the same offense, they were upheld by the Supreme Court of the United States.

However, the Fourth Circuit also held in Patton v. North Carolina and Pearce v. North Carolina that the double jeopardy provisions of the 5th and 14th Amendments of the U. S. Constitution likewise absolutely prohibit a court from imposing a longer sentence upon the second conviction for the same offense. The U. S. Supreme Court disagreed and held that "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction." 89 S.Ct. at 2079. Thus to the extent that *Patton* and *Pearce* (4th Cir.) held that the double jeopardy and equal protection clauses barred a longer sentence on reconviction of the same offense, they have been disapproved by the United States Supreme Court in North Carolina v. Pearce, supra.

Movant's contention that the double jeopardy and equal protection clauses of Amendments 5 and 14 barred the instant seven-year sentence is overruled.

Due Process: Movant contends the due process clauses of Amendments 5 and 14, U. S. Constitution, as interpreted by the Supreme Court of the United States in North Carolina v. Pearce, supra, and the U.S. Ct. of Apps., 4th Cir., in Patton v. North Carolina, supra, bars the imposition of the seven-year sentence he received upon the second conviction of the same offense.

Initially, the court must answer the question: Is a sentence of seven years *with a parole* "more severe" than a sentence of two years *without parole?* This question is presented because it is the "more severe" sentence that falls within the ambit of *Pearce,* supra.

In Missouri a trial judge is afforded broad discretion with respect to the disposition he may make of a criminal case after it is determined that the defendant is guilty of the offense charged, whether that determination is made on a plea of

guilty or by a finding by a judge or jury that the defendant is guilty. The trial judge may suspend the imposition of sentence or he may pronounce sentence and suspend the execution thereof. In either event, the judge may place the defendant on probation, § 549.071, subd. 1, and in some instances on parole, § 549.071, subd. 2, RSMo 1969, V.A.M.S.

The words "probation" and "parole" are oftentimes used interchangeably when the court, exercising its discretion under § 549.071, subd. 1, permits a defendant to remain at liberty regardless of whether sentence was imposed or not and even though the defendant was not initially confined following the sentencing. In the instant case, the court used the term "parole". In the context of this case, the words "probation" and "parole" denote the same event, to wit, the exercise of discretion by the trial court, pursuant to § 549.071, in permitting a defendant found guilty of a crime to be released wtihout imprisonment, subject to conditions imposed by the court and subject to the supervision of a probation service. Sec. 549.058(3), V.A.M.S.

The "sentence" that a court imposes consists of punishment that comes within the particular statute designating the permissible penalty for the particular offense. In the case of stealing over $50, the offense herein involved, the statute provides that the punishment shall be, "imprisonment in the penitentiary for not more than ten years nor less than two years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment." Sec. 560.161, RSMo 1969, V.A.M.S. Fixing the limits of punishment is a legislative function. State v. Smith, Mo., 445 S.W.2d 326, 332. In State v. Pruitt, Mo., 169 S.W.2d 399, 400, the court said, " 'In its technical legal sense the sentence generally constitutes and has the same meaning as judgment or final judgment or determination against accused in a criminal case. * *

Broadly, the term, in legal parlance, may be said to denote the action of a court of criminal jurisdiction, formally declaring to accused the legal consequences of the guilt which he has confessed or of which he has been convicted. However, a sentence is not, strictly speaking, the act of the court but the judgment of the law which the court is commanded to pronounce.' 24 C.J.S., Criminal Law § 1556, p. 15; State v. Kellar, 332 Mo. 62, 55 S.W. 2d 969."

Probation is not a sentence nor could the conditions of probation be a sentence. By way of example, a court, upon finding that defendant was guilty of stealing over $50, could not lawfully "sentence" a defendant to "not violating any law" or to "not frequenting places where intoxicating liquor is sold" because neither is permissible punishment under the statutes setting out what the punishment for the crime shall be. The court could, however, make the above-noted items conditions of probation, as is frequently done. When the conditions of probation are violated, it then becomes a matter of discretion on the trial court's part to decide whether or not to revoke the probation. One consequence of the revocation of probation can be a court's order that the sentence previously imposed be executed. Thus it is clear that the sentence is the penalty—the confinement for a period of time or the fine—and does not include as part of its definition such conditional orders as the court makes for the amelioration of the punishment—probation or parole. Probation lessens the immediate impact of the sentence on the defendant; but probation does not, per se, shorten or lengthen the sentence.

The court holds that probation or parole is not part of the sentence imposed upon a defendant.

In this case, the state argues that the sentence of seven years with probation was not as "severe" as the sentence of two years without probation, and that it is only

more severe sentences that come within the scope of North Carolina v. Pearce, supra, relying upon Thurman v. United States, 423 F.2d 988 (9th Cir., Feb.1970). In *Thurman* the court set the issue by stating that the "totality of the impact of the sentence on the defendant must be considered" in deciding whether the second sentence was "more severe" than the first. As part of the totality, the court considered the fact that the second-sentencing court, atfer sentencing the defendant to consecutive sentences of five years on one count and twenty-five years on another count, then suspended execution of the twenty-five-year sentence and placed Thurman on probation, such probation to begin on the expiration of the five-year sentence. The court held that, "In fashioning the new sentence, which, in its impact on defendant was substantially less severe than the original sentence, the District Court acted reasonably and properly and within the requirements of due process of law."

Thurman violated the conditions of probation and was ordered to serve the twenty-five-year sentence. It is apparent that the eventual impact on the defendant was that he had to serve more time under the second sentence than he would have been required to serve under the first sentence, and it is obvious that, in arriving at its decision affirming the District Court, the Ninth Circuit undertook to define "more severe" as that term is used in North Carolina v. Pearce, supra, to mean something more than "longer sentence", and by that reasoning avoided the impact of North Carolina v. Pearce.

In United States v. Barash, 428 F.2d 328 (2d Cir., June 1970), that court had issues before it similar to those in Thurman v. United States, supra, and said, loc. cit. 332: "Any attempt to compare one kind of punishment with another and to pronounce one more or less severe than another under circumstances such as those in this or similar cases is wholly impractical. It is simply not possible to compare a fine with a prison term and determine with any degree of accuracy which is the more severe. See e. g., United States v. Kelley, 5 U.S.C.M.A. 259, 263–64 (1954) (concurring opinion); United States v. Christensen, 12 U.S.C.M.A. 393 (1961). In addition to the difficulties of comparison, the inevitable result of permitting the second judge to perform such a trade-off between kinds and types of punishment would be innumerable appeals, putting this court knee-deep into the business of sentencing by requiring it to declare what punishment is the equivalent or less rigorous than some other punishment, and thus participate significantly in the fixing of penalties."

As stated previously, probation is not part of the sentence. If the words "more severe" as used in North Carolina v. Pearce, supra, are to be construed as meaning something other than a longer sentence or a larger fine, then the question of whether North Carolina v. Pearce has been violated becomes purely subjective and defies objective application. E. g., Is a sentence to life imprisonment with probation less severe than a sentence of two years without probation? The individual defendant standing before the sentencing court would probably take almost any sentence with probation—for it would, at least temporarily, permit him to be a free man—over any sentence that requires immediate confinement.

This court agrees with the Second Circuit's reasoning in United States v. Barash, supra, and rejects the reasoning of the Ninth Circuit in Thurman v. United States, supra. In cases coming on for a second sentencing following the decision of the United States Supreme Court in North Carolina v. Pearce, supra, (June 23, 1969) and where the second punishment is assessed by a judge rather than a jury, the second sentence cannot be longer than the first sentence except in those instances where the exception noted in North Carolina v. Pearce is present. This holding is limited to instances when the judge assesses punishment and pronounces sentence on the second plea

of guilty, or finding of guilty, because that is what occurred in the instant case.

◼ Retroactivity of North Carolina v. Pearce: In the instant case, the second sentencing occurred prior to the United States Supreme Court decision in North Carolina v. Pearce, supra, (June 23, 1969). Since that date, the United States Supreme Court has granted certiorari in two cases for the purpose of determining whether *Pearce* is to be applied retroactively, Moon v. Maryland, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262, and Odom v. United States, 400 U.S. 23, 91 S.Ct. 112, 27 L.Ed.2d 122. Subsequent to the granting of certiorari and prior to the courts' decisions, the sentencing judges in both cases filed affidavits giving their reasons for imposing longer terms on second sentencing, which reasons complied with the exception noted in North Carolina v. Pearce. In both cases the United States Supreme Court then dismissed the writs as improvidently granted on the grounds that the affidavits of the judges removed the issue of retroactivity from the cases.

Kansas and Maryland have denied retroactive application to *Pearce*. Young v. Kansas, 207 Kan. 166, 483 P.2d 1020; Wayne v. State of Maryland, 8 Md.App. 5, 257 A.2d 455. Pennsylvania and Michigan have applied *Pearce* retroactively. Commonwealth v. Allen, 443 Pa. 96, 277 A.2d 803; People v. Payne, 386 Mich. 84, 191 N.W.2d 375. In Pinkard v. Neil (M.D. Tenn.1970), 311 F.Supp. 711, the U. S. District Court gave full retroactive effect to North Carolina v. Pearce where a Tennessee state prisoner sought habeas corpus in the U. S. District Court. However, the Court of Criminal Appeals of Tennessee specifically refused to follow the decision in Pinkard v. Neil, and denied retroactive effect to *Pearce* in Brown v. Tennessee, Tenn.Cr.App., 466 S.W.2d 527, on the ground that the Supreme Court of Tennessee, in denying certiorari in Pinkard's state-court proceeding, rejected retroactive application of *Pearce*.

The question of retroactive application of *Pearce* is squarely presented in the instant case. This is so because (1) the second sentence of seven years was more severe— longer—than the first sentence of two years, and (2) the record of the second sentencing clearly demonstrates that the second sentence was imposed upon an evaluation by the judge of the offense committed by movant and his conduct prior to the commission of the offense of stealing over $50, including prior offenses. In short, Judge Henson obtained a full presentence investigation report and considered his duty with respect to sentencing the same as if it were an original sentencing. The record also discloses that movant did nothing after the first sentencing that Judge Henson considered significant in assessing punishment. Furthermore, there is absolutely nothing in the record that indicates any vindictiveness by Judge Henson toward the movant because movant was successful in his motion to vacate the first sentence, nor for any other reason. Everything that Judge Henson did was wholly legal and proper under the law as it existed on February 10, 1969, the date the seven-year sentence was imposed. Indeed, movant does not claim there was any vindictiveness on Judge Henson's part at all. What movant does claim, in effect, is that the failure of the sentencing judge to comply with the prophylactic rule announced in *Pearce* renders the sentencing invalid.

In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the question of whether Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977, should be applied retroactively was presented. The court held that both cases were to be applied only to those cases commenced after the dates that Miranda and Escobedo were announced. In so doing, however, the court held that prisoners convicted prior to the *Miranda* and *Escobedo* decisions could invoke a substantive test of voluntariness of their confessions. It was the *prophylactic* rule announced in

*Miranda* and *Escobedo* that the court declined to make retroactive.

The reasoning of the United States Supreme Court in Johnson v. New Jersey, supra, in declining to apply the prophylactic rule announced in *Escobedo* and *Miranda* is applicable to the question of applying the prophylactic rule announced in *Pearce* retroactively and militates against retroactive application of *Pearce*. In declining to give retroactive effect to *Miranda* and *Escobedo,* the court in Johnson v. New Jersey, supra, said, 384 U.S. at 732, 86 S.Ct. at 1780: "Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice." At the same time, however, the United States Supreme Court held that prisoners convicted prior to *Escobedo* and *Miranda* could invoke a substantive test of voluntariness.

In *Pearce*, the court set forth what due process of law prohibits at 395 U.S., loc. cit. 725, 89 S.Ct., loc. cit. 2080, saying: "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."

The court then implemented its holding by adopting a prophylactic rule limiting the grounds upon which a longer second sentence may be based to "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding", 395 U.S., loc. cit. 726, 89 S.Ct., loc. cit. 2081.

The court's announced purpose in adopting the rule set out above was to free the defendant of apprehension of being subjected to vindictive retaliation by the second-sentencing judge if the defendant was successful in obtaining a reversal of his first conviction, because the fear of vindictiveness could unconstitutionally deter the defendant from exercising his right of appeal or from collaterally attacking his first conviction.

Since the purpose of the prophylactic rule in *Pearce* is to remove certain fears from the mind of a defendant so as to permit him to freely exercise his right to appeal, the rule could only operate *in futuro*. A defendant convicted prior to *Pearce* has either appealed his case or sought other post-conviction relief, or he has not done so. If he has appealed or sought post-conviction relief, then the alleged apprehension did not deter him. If he has not appealed his first conviction, then there has been no second sentencing. In either event, retroactive application of *Pearce* could not accomplish the stated purpose of the prophylactic rule.

There was no way that Judge Henson could have anticipated that the United States Supreme Court would require such a procedure at the time he imposed the seven-year sentence, and it is evident that he was not motivated by any vindictiveness toward the movant.

The court holds that the prophylactic rule announced in North Carolina v. Pearce, supra, is not retroactive.

The judgment of the circuit court is affirmed.

HOLMAN, P. J., and BONDURANT, Special Judge, concur.

SEILER, J., not sitting.