STATE of Missouri, Respondent,

v.

Anna SAPP, Appellant.

No. WD 58602.

Missouri Court of Appeals, Western District.

July 3, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Application for Transfer Denied Oct. 23, 2001.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

SPINDEN, Chief Judge.

Anna Sapp appeals the circuit court's judgment in which she was convicted of

the Class D felony of hindering prosecution. She does not deny that she lied to Fulton police twice on August 3, 1999, when they asked her whether she knew the whereabouts of David Lindsay,[1] for whom an arrest warrant had been issued. She knew that the man who sat on her living room sofa and who identified himself as her former husband Michael Sapp was Lindsay. When an officer returned a brief time later to her Fulton apartment to question her again about Lindsay, she lied once more about Lindsay's identity and lied that he had left her apartment.

In this appeal, she contends that the state did not prove a requisite element of hindering prosecution as defined by § 575.030.1(4)[2]—that officers were trying to apprehend Lindsay for committing a criminal offense. Section 575.030.1(4) says, "A person commits the crime of hindering prosecution if for the purpose of preventing the apprehension ... of another *for conduct constituting a crime* he ... [p]revents or obstructs, by means of ... deception ..., anyone from performing an act that might aid in the discovery or apprehension of such person."[3] She contends that police were searching for Lindsay to apprehend him for not appearing for a probation revocation hearing, not to apprehend him for a crime. The state responds that, while the event which triggered the arrest warrant was Lindsay's failure to appear for the probation revocation hearing, officers were, in effect, seeking to *rearrest* Lindsay for the underlying felony of failing to pay child support—that is, seeking to apprehend him for conduct constituting a crime. The state argues, therefore, that it "alleged, proved, and

submitted the case to the jury on the theory that [Lindsay] was wanted for the crime of criminal non-support[.]"[4]

The warrant that Fulton police were attempting to execute commanded any Missouri peace officer to arrest Lindsay "FOR FAILURE TO APPEAR AFTER BEING CONVICTED OF [NONSUPPORT FOR SIX INDIVIDUAL MONTHS WITHIN 12 MONTHS, A FELONY CLASS D]."[5] The warrant also said, "FAILURE TO APPEAR FOR PROBATION VIOLATION HEARING 1ST APPEARANCE. PROBATION SUSPENDED AND PROBATION & PAROLE RELIEVED OF SUPERVISION PENDING ARREST OF DEFENDANT."

The state concedes that violating the conditions of probation is not a criminal offense. Indeed, this was the Supreme Court's ruling in *State v. Brantley*, 353 S.W.2d 793 (Mo.1962), in which the court explained, "A violation of the conditions [of probation] is not a criminal offense, and a proceeding to revoke obviously is not a criminal prosecution within the constitutional provisions." *Id.* at 796. *See also State v. Haynes*, 17 S.W.3d 617 (Mo.App. 2000). Probation is power granted by the General Assembly to the judiciary to lessen the impact of a criminal sentence on the defendant, and probation operates independently of the criminal sentence. *McCulley v. State*, 486 S.W.2d 419, 423 (Mo.1972); *Bell v. State*, 996 S.W.2d 739, 743 (Mo.App.1999).

When officers searched for Lindsay on August 3, 1999, they were not seeking to apprehend him for conduct that constituted a crime. They were seeking to apprehend him for conduct relating to his probation, which was independent of the underlying crime.

1. The transcript spells his name "Lindsey," but all of the official court records from Lindsay's case spell his name "Lindsay"; hence, we opt for the latter spelling.

2. All citations to statutes refer to the 1994 Revised Statutes.

3. We added the emphasis.

4. We omitted the citations to the transcript and legal file.

5. The words in brackets were abbreviated.

The state points to the concurring opinion of Judge Crandall in *State v. Murphy,* 787 S.W.2d 794, 797 (Mo.App.1990), in which he characterized arrest for a possible probation violation as a "rearrest:"

[D]efendant was put on probation after a conviction for the crime of robbery in the first degree. He was later rearrested for that same crime. The reason for his rearrest for that crime was a possible probation violation. The term "possible probation violation" is simply an explanation for his rearrest for the underlying crime.

A probation revocation hearing is civil in nature in that a defendant is not entitled to the full panoply of rights that he has in a criminal trial. In this case the defendant had previously pleaded guilty and been sentenced. The purpose of the probation revocation hearing was to decide whether that sentence should be executed. If the hearing had occurred and the sentence been ordered executed, it would have been for the conviction of the crime of robbery in the first degree. The reason for ordering the execution of the sentence would have been based on a finding that defendant had violated the terms of his probation.

We disagree.

■■■ The purpose of a probation revocation hearing is to decide whether the judiciary should rescind its granting of grace to lessen the impact of a criminal sentence. If the judiciary rescinds its grace, the independent criminal judgment is in force. The criminal judgment has been there all along, but its effectiveness has been estopped by the judiciary's intervening act of grace.[6] *See Abell v. State,* 606 S.W.2d 198, 203 (Mo.App.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981) (Dowd, J., dissenting) ("probation revocation hearing is not a criminal proceeding. . . . The purpose of such a hearing is not to determine whether the probationer is guilty of the allegations which may possibly result in revocation of his probation but is for the purpose of determining whether or not termination of probation is 'warranted by the conduct of defendant and the ends of justice.' ").

This conclusion is further buttressed by the procedures set forth by the General Assembly in § 559.036, RSMo 2000, for probation violations. Section 559.036 says:

4. Probation shall not be revoked without giving the probationer notice and an opportunity to be heard on the issues of whether he violated a condition of probation and, if he did, whether revocation is warranted under all the circumstances.

5. At any time during the term of probation, the court may issue a notice to the probationer to appear to answer a charge of a violation, and the court may issue a warrant of arrest for the violation. Such notice shall be personally served upon the probationer. The warrant shall authorize the return of the probationer to the custody of the court or to any suitable detention facility designated by the court.

The General Assembly has specifically recognized that the circuit court issues a war-

---

6. In *State ex rel. Juergens v. Cundiff,* 939 S.W.2d 381, 382 (Mo. banc 1997), the Supreme Court has said that for purposes of § 552.020.1 probation revocation hearings are part of sentencing, but the court was clear that it was restricting application only to § 552.020 proceedings. In *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330, 340 (Mo.App.1983), and *State ex rel. O'Brien* v. *Murphy,* 592 S.W.2d 194, 196 (Mo.App. 1979), this court's Eastern District ruled that for purposes of imposing Rule 30.12 a probation revocation hearing was not a separate, independent proceeding. That these courts felt compelled to "carve out" exceptions for specific instances demonstrate that, indeed, probation revocation is independent of the underlying criminal action.

rant of arrest for the probation violation and not for the rearrest of the individual for the underlying crime. That the probationer is given an opportunity to be heard on whether he violated a condition of probation establishes that the probation violation is something separate from the criminal proceeding.

Moreover, that an individual is arrested does not necessarily suggest that the case involves a criminal charge. To arrest an individual means "[t]aking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand." BLACK'S LAW DICTIONARY 109–10 (6th ed.1990). Lindsay, in this instance, was arrested for a probation violation, not a criminal charge.

The state argues that Judge Crandall's reasoning—that an arrest for a possible probation violation is a "rearrest" for the underlying crime—"is simply a matter of common sense. If that were not the case, individuals could, with complete impunity, hinder prosecution or resist or interfere with an arrest ... simply because the police were attempting to re-arrest a fugitive for a particular crime after he or she had been placed on probation or parole." As compelling as the state's common sense argument is, we are bound by the General Assembly's statute. It is the General Assembly who determines what shall constitute hindrance of prosecution, and it has restricted it application to hindering officers from apprehending a person for conduct "constituting a crime." Lindsay was not wanted by officers for conduct constituting a crime; hence, § 575.030.1(4) was not applicable to this case.

Although the state alleged in the first amended information and submitted the case to the jury on the theory that Lindsay was wanted for the crime of criminal nonsupport, the state did not prove that the police were seeking to apprehend Lindsay for conduct constituting a crime. The state argues that it proved that police were seeking to apprehend Lindsay for the crime of nonsupport, but it points to police testimony that officers were trying to execute the warrant for Lindsay's arrest. The warrant, however, instructed police to arrest Lindsay for failing to appear for a probation violation hearing. Hence, the circuit court erred in overruling Sapp's motion for judgment of acquittal at the close of the evidence. The state did not present any evidence establishing a key element of hindering prosecution. We reverse the judgment.

PATRICIA A. BRECKENRIDGE, Judge, and THOMAS H. NEWTON, Judge, concur.