## MACK WILLIAMS, JR. *v.* STATE OF MARYLAND

[No. 209, Initial Term, 1967.]

*Decided October 16, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*John R. Hargrove* for appellant.

*Donald Needle,* with whom were *Francis B. Burch, Attorney General, Thomas P. Perkins, III, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *George J. Helinski, Deputy State's Attorney for Baltimore City,* on the brief, for appellee.

TRAVERS, J., delivered the opinion of the Court.

Appellant was indicted for the murder of one Inger Harris and for carrying a concealed weapon. The indictments were consolidated for trial, and appellant was found guilty of murder in the second degree and guilty of carrying a concealed weapon by a jury in the Criminal Court of Baltimore on June 8, 1966. He was sentenced to eighteen years imprisonment on the murder charge, and one year, concurrent, on the concealed weapon offense. This appeal is from those judgments.

On July 22, 1964, at approximately 10:00 p.m., the body of the decedent was discovered in a residence in Baltimore City. It was stipulated that the cause of death was a gunshot wound in the neck which nearly completely severed the spinal cord. As a result of preliminary investigation, the police put out a teletype bulletin advising that the appellant was wanted in connection with the incident. At approximately 2:30 a.m., on July 23, 1964, Officer John Schaech was walking his beat in Baltimore City when he observed a man lying on a public sidewalk in front of premises known as 1642 Bond Street. The man identified himself as the appellant, and was taken into custody. At approximately 4:30 a.m., the appellant was taken to Lt. Frederick Koenig of the Baltimore City Police for interrogation. At approximately 5:30 a.m., Lt. Koenig took a statement in question and answer form which contained incriminating information. The appellant refused to sign the statement.

Appellant was subsequently indicted and tried on February 3, 1965. That trial resulted in a verdict of guilty of murder in the first degree and of carrying a concealed weapon. While disposition of a motion for new trial was pending, the Court of Appeals handed down its decision in *Schowgurow v. State,* 240 Md. 121. Appellant's motion to dismiss the original indict-

ment on the basis of *Schowgurow* was granted. He was re-indicted and on June 7 and 8, trial was held before a jury in the Criminal Court of Baltimore. The trial court overruled appellant's plea of double jeopardy and pleas of not guilty were entered to both indictments. The verdicts are noted above.

Appellant raises four issues on this appeal. He alleges: (1) that he was placed in jeopardy twice because of the second indictments and trial; (2) that the evidence introduced was insufficient to convict him of either offense; (3) that the Court erred in admitting into evidence certain testimony of Lt. Koenig with respect to appellant's unsigned statement and subsequent oral admissions, and (4) that the appellant was deprived of due process of law by virtue of the court's refusal to give him credit on the sentence imposed for the time spent in jail awaiting trial.

The appellant's claim of double jeopardy is without merit. By his election to have the indictments of his first trial invalidated under *Schowgurow,* appellant has brought himself within the rule that when a traverser has been tried under an invalid indictment, he has not been in jeopardy and can be tried again. *Sadler v. State,* 1 Md. App. 383; *Moon v. State,* 1 Md. App. 569. See also *Tate v. State,* 236 Md. 312.

Appellant contends that his statements to the police should not have been admitted into evidence because they were not freely and voluntarily given. As appellant was convicted on June 8, 1966, the protections afforded by *Miranda v. Arizona,* 384 U. S. 436, are not available to him. See *Johnson v. New Jersey,* 384 U. S. 719, wherein it is held that *Miranda* was "available only to persons whose trials had not begun as of June 13, 1966" (the date of the decision of *Miranda*). Appellant likewise can derive no comfort from *Escobedo v. Illinois,* 378 U. S. 478, because the record fails to indicate that he made an affirmative request for counsel prior to the interrogation which resulted in the statements he wishes to exclude from evidence. That this was an essential requirement for the application of *Escobedo* is now beyond doubt. *Campbell v. State,* 244 Md. 363, 366; *Westfall v. State,* 243 Md. 413; *Mefford and Blackburn v. State,* 235 Md. 497, *cert. den.* 380 U. S. 937.

We thus turn to an examination of the applicable law with

respect to the admissibility of confessions and oral admissions as it existed on June 7 and 8, 1966. It is beyond dispute that the test then was whether the disclosures were made to police freely and voluntarily and at a time when the accused knew and understood what he was doing. *Tate v. State, supra; Wiggins v. State,* 235 Md. 97; *Bryant v. State,* 229 Md. 531. In determining whether statements were freely and voluntarily given, reference must be had to the "totality of circumstances" surrounding the statement. *Haynes v. Washington,* 373 U. S. 503.

The appellant is a forty-two year old male, with a sixth grade education and the capacity to read and write. He testified at the trial that he had been employed by Bethlehem Steel Corporation for fourteen years, that his present position was that of a scaler and that his salary was between $145.00 and $150.00 a week. The testimony also indicates that the appellant, when apprehended by Officer Schaech at approximately 2:30 a.m. on July, 23, 1964, was drunk. The officer acknowledged on cross-examination that the appellant was incoherent, but that his incoherence did not extend to such a degree that the officer could not understand his response when asked what his name was. Approximately two hours after his apprehension, the interrogation was undertaken by Lt. Koenig, and other police officers. Lt. Koenig testified that the appellant was not offered any promises or award of immunity in order to obtain a confession and that the appellant was not threatened, abused or assaulted, that he was sober, but had been drinking, that the appellant did not try to go to sleep during the interrogation, that the appellant never requested to see anyone, and that the appellant was never out of Lt. Koenig's presence while being questioned.

Lt. Koenig further testified that he initially discussed the case with the appellant orally, and after having obtained an oral admission he undertook to reduce the admission to a typewritten statement. The statement which the appellant refused to sign was typed at approximately 5:30 a.m.

In response to a question by the court, the officer testified that he warned the appellant that his statement might be used against him both at the time he began interrogation and at the time he endeavored to reduce the admission to writing. The

officer did not advise the appellant that he had a right to have counsel present.

The appellant's testimony with respect to the voluntary nature of the statement conflicts in several instances with that of the police officer. Appellant confirmed that he was not drunk at the time of the interrogation, but said that he had been drinking all day long and was "high." Appellant's testimony boils down to a complaint that he was tired and wanted to go to sleep, but that the police kept shaking his head to keep him awake, and that he refused to sign the statement because it contained information which he did not relate.

The determination of the admissibility of extrajudicial statements is left largely to the discretion of the trial court (within the limits, of course, of applicable State and Federal constitutional guidelines) and such discretion will not be disturbed on appeal unless there is a manifest abuse of discretion. *Grammer v. State,* 203 Md. 200. Certainly, the question of credibility is one peculiarly within the province of the trial court.

We hold that under the "totality of circumstances," appellant's extrajudicial statements were freely and voluntarily given and, accordingly, properly admitted into evidence. Appellant urges most strenuously that he couldn't have been anything but drunk at the time of the interrogation. We disagree. The interrogation took place about two hours after he was picked up in a drunken state. Appellant by his own testimony states that he was not drunk, Lt. Koening confirms this fact, and the contents of the unsigned statement confirm that the appellant was reasonably articulate and lucid.

Appellant also suggests that there was insufficient evidence to sustain the convictions. We believe this contention to likewise be void of substance.

Without regard to the evidence introduced by the police officer as to the appellant's extrajudicial statements, it seems clear that there is more than enough evidence in this case to warrant the verdicts on both charges. Appellant himself testified at the trial that he went to the residence where the decedent's body was found, had an argument with her, pulled a pistol out of his pocket and "went to strike her," when "the gun went off." It was appellant's contention that he did not in-

tend to shoot the decedent, but merely to strike her, and the gun went off accidentally.

In *Davis v. State,* 237 Md. 97, 104, the Court of Appeals held that "an actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack." See also *Webb v. State,* 201 Md. 158. The appellant's own testimony is obviously sufficient to show an intent to inflict bodily harm.

Additionally, it is well settled that the law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. *Tate v. State, supra.* Appellant does not seriously contend that malice may not be inferred from the use of the deadly weapon under the circumstances.

We likewise think the evidence is more than sufficient to sustain the verdict on the indictment for carrying a concealed weapon. Again, the appellant's own testimony indicated that he had the weapon in his right front pocket immediately prior to the shooting, that he took it out, and attempted to strike the deceased with the pistol.

Appellant finally contends that he was denied due process and equal protection of the law by virtue of the court's failure to give him credit on his sentencing for the time he spent in jail prior to the second trial.

Appellant was taken into custody on the morning of July 23, 1964. He apparently remained in jail continuously from that time until the imposition of sentence on June 8, 1966. A portion of the time spent in jail is attributable to the fact that the appellant chose to exercise his right to move for the dismissal of the original indictments in the case, on which he had been tried and found guilty of first degree murder. In any event, at the conclusion of the second trial, the lower court sentenced the appellant to eighteen years in the penitentiary on the murder charge, said term being the maximum permissible for murder in the second degree at the time. The court also sentenced him to one year on the concealed weapon charge, to run concurrently with the murder sentence.

We know of no law requring a sentencing judge to give cred-

it for time spent in jail pending a trial and prior to sentencing. See *Hands v. Warden,* 205 Md. 642. The short answer to appellant's contention is that the sentences imposed upon him were within statutory limits and since they were not dictated by any unworthy motive on the part of the sentencing judge, they are not reviewable on appeal. *James v. State,* 242 Md. 424; *Logan v. State,* 1 Md. App. 213.

*Judgment affirmed.*