WILLIAM RANDOLPH SMITH *v.* STATE
OF MARYLAND

[No. 66, September Term, 1967.]

*Decided May 13, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Frank P. Flurry* and *J. Frederick Garner* for appellant.

148

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On February 13, 1967, appellant, William Randolph Smith, was convicted by a jury of robbery with a deadly weapon, in the Circuit Court for Prince George's County, Judge Ralph W. Powers presiding. Appellant was sentenced to sixteen years in the Maryland Penitentiary.

Appellant raises three contentions on appeal:

1. That appellant was denied a fair trial when the State forced him to stand trial with shaggy, unkempt hair; notwithstanding that the State had kept defendant incarcerated for three months, and had refused his pre-trial requests for a haircut.

2. That the appellant's confession was inadmissible because the State failed to prove the chain of custody of the defendant's person from the time of his arrest.

3. That the appellant was entitled to be told of his alleged confession to a third party, in response to defendant's motion for discovery.

The evidence adduced at the trial established that one Peter Barbera was awakened by his wife, during the early morning hours of July 18, 1965, and was confronted by the presence of two men in his bedroom. One intruder positioned himself in the doorway of the bedroom and the other, while pointing a gun at Mr. Barbera, directed him to turn over. A demand was then made for money. Both men ransacked the Barbera home in an effort to secure the money, but did not meet with success. Thereafter, a threat to harm the Barbera's young son evoked the whereabouts of the sought after money from Mr. Barbera. After securing some $600 to $650 from him, Mr. Barbera was then tied up with a venetian blind cord and something was put over his head.

Mr. Barbera described the culprits as both being masked and wearing old clothes. Although unable to physically identify the assailants, he was able to positively identify the voice of the appellant as a former employee. Mr. Barbera made his voice identification, while appellant was in custody, and noted that appellant's voice was "distinctively high-pitched" and that he had referred to Mrs. Barbera as "Ma'am."

Witness Robert S. Thompson testified that he was acquainted with the appellant and that while in the presence of the appellant and his brother, sometime in July 1965, he heard the appellant's brother state that he would tell the police about the "Barbera job." Appellant admonished his brother to "shut up or they would all get twenty years." Furthermore, Thompson testified that appellant's brother, Robert Smith, showed the witness some old clothing and hooded masks, while the witness was visiting the appellant's apartment.

Detective Sergeant James Ross of the Prince George's County Police Department, saw the appellant in the county jail in November 1966, at which time he advised the appellant of his rights and secured a signed document from appellant wherein appellant acknowledged being so advised. A second document was secured wherein the appellant "agreed to stay and talk to Detective Ross" about "this matter."

Appellant's counsel below objected to the admission of any statement absent a showing of a "chain of custody of the person of defendant from the time he was taken into custody until the time of the confession." Appellant had been incarcerated for two or three days prior to the confession.

Appellant was not advised by the State of witness Thompson's expected testimony with respect to appellant's confession in response to the motion for discovery that he had filed.

The trial court ruled that the State had successfully presented a prima facie showing of voluntariness, in the absence of the appellant establishing that his statement was not free and voluntary.

Appellant repudiated his confession stating he had admitted his participation in the hold-up only to enable him to see his girl friend, Anita Shannon.

During his period of custody, appellant was permitted to use the telephone, a privilege which he fully exercised.

Appellant predicates his primary contention upon the rulings evidenced in the cases of *Eaddy v. People,* 115 Col. 488, 174 P. 2d 717 (1946) ; *State v. Coursolle,* 255 Minn. 384, 97 N. W. 2d 472 (1959) ; *People v. Strauss,* 174 Misc. 881, 22 N. Y. S. 2d 155 (1940). These cases are readily distinguishable from the instant case. In *Eaddy v. People, supra,* the court's attention was focused upon the manner of apparel allotted to a defendant for trial. While the court found that the subject of a defendant's apparel rests within the discretion of the trial court, the fact that the defendant was brought to trial, over objection, in prison apparel with the words "County Jail" in large letters, constituted an abuse of that discretion. The court further observed that a defendant has a right to go to trial free from shackles, unless shown to be a desperate character. In *State v. Coursolle, supra,* the court evidenced its displeasure and intolerance of having a defendant appear at his trial shackled or his witnesses so appear unless the trial court was exercising its discretion based upon "some immediate necessity for the use of the shackles." In *People v. Strauss, supra,* the court's inquiry was directed to the issue of potential disguise and the possibility of adopting a disheveled appearance to enhance a feigned psychosis. There the court observed that the lower court was empowered with sufficient authority to compel shaving, washing, dressing and hair grooming in such a manner as to avoid the possible impeding of justice.

The instant case does not involve prison apparel, shackles nor potential disguise or mental disorder. But rather, a desired haircut, not requested of the court until the start of the trial.

The courts in these aforenoted cases duly recognized that matters of this kind are primarily within the discretion of the trial court and that only a patent abuse of such discretion warranted a reversal. Thus they are in agreement with our observation that the trial court is in an advantageous position to judge the question of prejudice and its decision with reference thereto should not be reversed unless it is clear that there was prejudice. *Carroll v. State,* 3 Md. App. 50, 51, 237 A. 2d 535, 538 (1968).

Here, while the appellant had requested a haircut prior to trial from the prison authorities, if he had viewed such a tonsorial exercise to be of material import, it would have been more prudent for him to have secured a court order requiring the securing of said haircut sufficiently in advance so as not to hamper the orderly progression of the trial. We further note the absence of the propounding of any relevant voir dire inquiry by appellant. This record is barren of any substantiating evidence of the alleged prejudicial consequence, apart from the bald allegation of the appellant. Upon this record, the absence of the requested haircut constitutes too nebulous an effect to conclude clear prejudice. The trial court did not view the condition of appellant's hair as prejudicial, nor do we.

The test for the admissibility of a confession is whether it was freely and voluntarily made at a time when the defendant knew and understood what he was saying. *Cooper v. State,* 1 Md. App. 190, 198, 228 A. 2d 840 (1967). In reaching a determination as to whether a statement was freely and voluntarily given, proper reference must be accorded the totality of the circumstances surrounding the statement. *Williams v. State,* 2 Md. App. 170, 174, 234 A. 2d 260 (1967) citing *Haynes v. Washington,* 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963). Clearly, whether a confession is voluntary or not depends upon the facts of each case. *Boone v. State,* 2 Md. App. 80, 233 A. 2d 476 (1967). *Cooper v. State, supra,* 194.

"The admissibility of a confession is, preliminarily, a matter for the trial judge. Conflicts in testimony as to how the confession was obtained are to be resolved in the first instance by the trial judge and if, after finally and independently resolving the issue of voluntariness against the accused, the trial judge admits the confession, the matter of voluntariness is finally determined by the jury." *Davis and Peterson v. State,* 1 Md. App. 581, 585, 232 A. 2d 535 (1967) citing *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) ; *Sims v. Georgia,* 385 U. S. 538, 87 S. Ct. 639, 17 L. Ed. 2d 593 (1967). Furthermore, where the trial judge believes that a confession was freely and voluntarily made, his finding will not be disturbed on appeal unless there was a clear abuse of discretion. *Boone v. State, supra,* 96.

Here, Detective Sergeant James Ross had secured the challenged statement and had testified as to the voluntary character of same as evidenced by two properly executed waivers signed by the appellant and a gratuitous laudatory written statement by appellant relating to the manner of treatment rendered him. Appellant made no proffer of evidence of coercion or inducement specifically directed at other than Sergeant Ross. Appellant alleged that he was induced to render the confession by a promise that thereafter he could see his girl friend. This allegation was contained in appellant's letter dated November 6 which the State introduced, thus making a complete disclosure of the issue of voluntariness to the jury. The record is clear that the appellant had free access to the telephone and made those calls he desired. The surrounding circumstances of this confession were thoroughly reviewed by the trial judge in reaching his determination of prima facie voluntariness. Thereafter, a full disclosure was made to the jury for their ultimate determination. We find no clear abuse of the trial judge's discretion. *Boone v. State, supra,* 96. After this matter went to the jury, appellant made no proffer of evidence to rebut the voluntariness of the statement, but continued to stress that the statement was inadmissible because the State failed to prove the chain of custody over the appellant's person from the time of arrest to the time he rendered his confession.

While it is well settled that the burden of establishing the voluntary nature of a confession rests upon the State, there is no mandatory rule that this necessitates the calling of all persons having had charge over the individual or having witnessed the taking of the confession to testify as to its voluntary character. *Bagley v. State,* 232 Md. 86, 93-94, 192 A. 2d 53 (1963). As we stated in *Harris v. State,* 1 Md. App. 318, 323, 229 A. 2d 604 (1967).

> "It may be enough if one credible witness can testify from personal observation that nothing was said or done prior to and during the obtention of a confession to mar or destroy its voluntary character and there is no claim by the prisoner of improper treatment by others than those covered by such testimony. *Streams v. State,* 238 Md. 278 (1965)."

We find no merit to appellant's contention that the State must abide by a stringent requirement of proof evidencing a chain of custody inclusive not only of the party securing the challenged statement but of all "other persons" coming into contact or exhibiting control over the person of the appellant encompassing the full spectrum of time prior to the securing of the statement, absent a showing of extraordinary circumstances embracing a significant degree of specificity in his challenge to the issue of voluntariness.

Appellant's final contention is without merit. Appellant had filed a Motion for Discovery requesting the State "to furnish the substance of any statement or conversation between the appellant and any other person, which statement or conversation the State intends to produce at the trial of this cause." No court order was requested by appellant to compel a timely answer. Appellant contends that pursuant to Rule 728 he was entitled to the substance of the oral incriminatory statements he made to one Robert S. Thompson, a witness called by the State.

The short answer is that such an "oral statement" not involving State agents, is not within the purview of Maryland Rule 728. *Barton v. State,* 2 Md. App. 52, 57, 233 A. 2d 330 (1967).

While appellant claims total surprise in not previously being informed of appellant's incriminatory statements to Thompson, we note that there was no order pursuant to Maryland Rule 728 b, specifying a time in which the State was required to answer the motion and the record does not show such an order was requested or that appellant sought a delay as a result of being furnished certain information three days before trial on his two month old motion. Nor was there a timely objection to Thompson's testimony, but rather the appellant elected to cross-examine the witness and therefore waived the issue of surprise on appeal. Maryland Rule 1085. At the close of all the evidence, the appellant moved for a mistrial which was denied. It is clear that the matter of granting or denying a motion for a mistrial is within the discretion of the trial court. *Barton v. State, supra,* 59. We find no abuse of that discretion.

*Judgment affirmed.*