WILLIAM LEE JONES, JR. *v.* STATE
OF MARYLAND

[No. 118, September Term, 1970.]

*Decided March 29, 1971.*

The cause was argued before MURPHY, C.J., and AN-DERSON and POWERS, JJ.

*Raymond M. Faby,* with whom was *Nathan Stern* on the brief, for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Kiel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, William Lee Jones, Jr., was tried in the Criminal Court of Baltimore in a court trial by Judge Joseph L. Carter upon seven indictments, same being Indictments #2385, #2386, #2387, #2388, #3259, #3260 and #3261. He was convicted of sodomy under Indictment #2385 (first count) ; kidnapping under Indictment #2386 (first count) ; forgery under Indictment #2387 (first count) ; possession of barbiturates under Indictment #2388 (first count) ; and forgery under Indictments #3259, #3260 and #3261 (first count). Appellant was given consecutive sentences under Indictment #2385, ten years; Indictment #2386, thirty years; Indictment #2387, ten years; and concurrent sentences under Indictment #2388, one year; Indictment #3259, ten years; Indictment #3260, ten years; and Indictment #3261, ten years, to run concurrently with the sentences imposed in Indictment #2387.

By agreement between the appellant and the State, and with the consent of the court, the three indictments charging sodomy, kidnapping and possession of barbiturates, together with the four separate indictments charging forgery, were consolidated for trial. It was further stipulated and agreed between the appellant and the State that the State would proceed on an agreed statement of facts as to the evidence to be produced under the forgery indictments.

On appeal the following questions are presented:

1) Did the court have sufficient evidence to convict the appellant of sodomy, kidnapping, violation of barbiturate laws, and forgery?
2) Did the court commit error in allowing the prosecuting witness to testify?
3) Did the court commit error in allowing the State's Attorney to have a private conference with the prosecuting witness?
4) Did the court commit error in its failure to

rule on appellant's motion for judgment of acquittal?

5) Did the court commit error by refusing to give appellant credit for time that appellant was in custody prior to his trial?

From the evidence adduced by the State, the lower court could find that on March 13, 1969, at approximately 10:00 p.m., as the victim, Michael Roy Crabtree, age 12, was leaving the Moonlight Restaurant at Baltimore and Broadway Streets he was accosted by appellant who forced Crabtree into his small white automobile, parked outside the restaurant. After making two stops, appellant drove to 4404 Penhurst Avenue where he maintained a bedroom. On the way, he gave the boy six capsules and whiskey. Upon arrival at 4404 Penhurst Avenue, appellant and the victim got out of the car and he took the boy to his bedroom on the second floor. After entering the room, appellant went out and locked the door. In a short time, he returned and made a phone call, during which time the victim Crabtree passed out and could remember nothing further.

Several hours later, at about 1:25 a.m., Officer Joseph R. Muller of the Northwestern District Police Station, together with Officer Joseph Downey, went to 4404 Penhurst Avenue to serve a warrant upon appellant, charging him with forgery. The officers were admitted by James Lester Hill, ostensibly a resident. Upon information from Hill, the two officers went to a third floor unfurnished room where they found appellant apparently asleep on a mattress on the floor. He denied his identity and claimed to be Charles Stokes. Appellant, who was not wearing shoes, was taken to the first floor. He asked for his shoes and Officer Muller returned to the room, but could not find them. Having received information that appellant had a room on the second floor, he went back to the second floor, but the room door was locked. He gained admittance with the assistance of Hill, who had an adjoining room, and found the victim Crabtree lying

unconscious on a bare mattress, naked from the waist down with excrement on his posterior as well as the mattress, and a white shirt over his face. After the boy was found, Officer Downey brought appellant up to the room and asked him if this was his room and he said "yes." He denied knowing the boy on the bed and stated his room had been broken into. In the room were found appellant's shoes and other clothing as well as the boy's clothing, a jar of petroleum jelly, several pornographic magazines, letters addressed to the appellant, and check stubs with his name on them. An ambulance was called and when the ambulance crew arrived to take the boy to the hospital, appellant turned over to the officers some orange capsules, two of which he stated he had taken from the boy and the others he had found on the floor. The capsules were proven to be secobarbital, a narcotic drug.

Appellant was placed under arrest and taken to the Northwestern District Police Station where he was given the full *Miranda* warnings. He signed an explanation of rights which was witnessed by both Officers Downey and Muller, same being State's exhibit #9.

In the statement of facts regarding the four separate forgery indictments, agreed to by the defense, the State's witness, Elroy C. Wilson, would testify that he was the owner and operator of the Elroy C. Wilson Funeral Home; that in the latter part of January and early February 1969 four checks mailed from the Home Beneficial Life Insurance Company to the funeral home were missing, and that during this time appellant was employed as a substitute organist at the funeral home. In February, 1969, Mr. Wilson received a communication from Mrs. Nancy Fromm, Assistant Manager of the Maryland National Bank, 237 North Howard Street, that the bank had cashed a check on February 6, 1969, in amount of $1,000.00, identified as E68672, and that the check had come back to the bank bearing a forged endorsement. Had she testified she would give a description of the individual who cashed the check as a colored male, late twen-

ties, slick hair, tall, well dressed, with feminine manner-isms. Were she in court she would identify the appellant, William Jones, as the individual who cashed the $1,000.00 check. Mr. Wilson would further testify that on February 21, 1969, having a description of William Jones, he obtained a warrant for appellant. With the warrant in his possession Officer Muller went to 4404 Penhurst Avenue, as previously testified to, and apprehended the appellant who was taken to the Northwestern Police Station. Before any questioning. he read to him an explanation of rights, which appellant then read and signed. Appellant admitted the forgery, but made no further statement.

On March 27, 1969, following the preliminary hearing, appellant was asked by Officer Muller if he would answer questions relating to the checks. Appellant agreed and was again taken to the Sergeant's room. Present in the room were Officer Downey, Officer Muller, Detective Meeks of the Check Squad, a member of the Postal authorities, and Mr. Wilson. Officer Downey again read to appellant a waiver of rights form and appellant was allowed to re-read it. Jones then placed his initials at the bottom of the form and the date March 27, 1969 thereon. The form was the same form he had previously signed on March 13, 1969. At this time he agreed to answer the questions of the officer, and in the course of questioning, which lasted forty-five minutes, appellant admitted that he had taken the four checks from the funeral home on Orleans Street and cashed them. He cashed the $1,000.00 check at the Maryland National Bank on February 6, 1969, the other three checks were cashed at the Union Trust Company, two of the checks on February 6, 1969, and the third check on February 18, 1969. The officers would further testify, from the time of his initial custody and through both interrogations, no promises or threats were made to appellant or his friends or relatives to make the statement or sign the waiver form. Officer Muller would testify that he received the $1,000.00 check from the Maryland National Bank and the other three checks for $2,000.80, $500.00 and $269.00 from the Union Trust

Company. Mr. Wilson would testify that he did not receive the four checks, and upon examination he would testify none of the endorsements on the checks was his.

## I—SUFFICIENCY OF THE EVIDENCE

Under the law of this State the test to be applied by this Court in reaching a determination of the sufficiency of the evidence in a non-jury case is whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the lower court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged, *Williams and McClelland v. State,* 5 Md. App. 450; *Jones v. State,* 5 Md. App. 180; *Roeder v. State,* 4 Md. App. 705; and the judgment of the lower court will not be set aside unless clearly erroneous. Maryland Rule 1086.

### Kidnapping

If the trial court believed the testimony of the victim, there was evidence from which the trial court could find appellant guilty of kidnapping. Article 27, § 337, Maryland Code. According to the victim's testimony, he was accosted by appellant and forcibly compelled to travel with appellant to the Penhurst Avenue house where appellant maintained a bedroom. Upon arrival, he was forced into the house against his will and locked in appellant's bedroom. From the physical evidence he was taken there for the purpose of performing a criminal act upon him. The victim was able to describe appellant's automobile, a small white car with multi-colored lights in the interior. While appellant denied he had ever taken the boy in his automobile, he admitted that he owned a white Corvair and that when the door was open two kinds of lights came on. Moreover, the victim was found inside the appellant's locked room, unconscious, and under the influence of drugs and whiskey. Appellant admitted seeing the boy in the house in which he maintained a bedroom, but stated that he had taken the drugs and whiskey from the boy's possession. Since there was a conflict in the tes-

timony of the victim and the appellant, the rule is well established that in a non-jury case the trial court may weigh the credibility of the testimony of the accused and is not required to give it credence. *Bury v. State,* 2 Md. App. 674. The facts themselves, which are undisputed, support the victim's story. Moreover, the victim in court positively identified the appellant as his abductor. A victim's positive identification of a criminal defendant is sufficient to sustain a conviction. *Jones v. State,* 2 Md. App. 371; *Melia and Shelhorse v. State,* 5 Md. App. 354; *Wayne v. State,* 8 Md. App. 5.

From the State's evidence, if believed, every element of the crime was proven and we cannot say that the finding of the lower court that appellant was guilty of kidnapping was clearly erroneous. Maryland Rule 1086; *Midgett v. State,* 216 Md. 26; *Laws and Dorman v. State,* 6 Md. App. 243.

## Sodomy

There was also ample evidence to find the appellant guilty of sodomy. The victim was found in appellant's bedroom, lying upon a mattress, naked from the waist down with excrement over his posterior and upon the mattress. Upon examination at the hospital, the rectum showed a one inch anal tear. The tear was from the outside to the inside, with bruising around the anus. The doctor's diagnosis was rectal penetration with tear, and in his opinion resulted from something having been forced into the rectum. While appellant denied any acts of perverted practice with the victim, the facts themselves point to him as the guilty party. See *Bradbury v. State,* 233 Md. 421; *Canter v. State,* 224 Md. 483. Moreover, appellant's tee shirt, recovered from him at the time of his arrest, contained human excrement similar to that found on the boy and on the mattress. In view of the testimony of the victim, that he had been taken by the appellant to his bedroom after first having been given drugs and whiskey, where he passed out and could remember nothing further, we find that there was sufficient

direct and circumstantial evidence upon which the lower court could convict appellant of sodomy beyond a reasonable doubt.

## Possession of Barbiturates

From the evidence it is clear that appellant had in his possession at the time of his arrest capsules found to contain secobarbital, a narcotic drug. Moreover, the victim testified that appellant had given him six to take on the drive to appellant's room on Penhurst Avenue. While appellant acknowledged possession of the several capsules, he claimed he had obtained two of them from the boy and had found the others on the floor of the bedroom and was waiting to turn them over to the proper authorities. It is apparent that the lower court did not believe his story. The credibility of witnesses is for the lower court, and the trial judge was not obligated to believe appellant's testimony or denial of guilty possession. *Bury v. State, supra.* Under the facts we cannot say the lower court was clearly erroneous in finding appellant guilty of possession of barbiturates. Maryland Rule 1086.

## Forgery

With regard to the four separate offenses of forgery, appellant challenges the sufficiency of the evidence presented in the stipulated statement of facts, claiming that the State failed to identify appellant for the record in presenting the statement of facts. We find no merit to this contention. The record is replete in the statement of facts, with several identifications of the appellant as the party in court as well as the defendant who signed the explanation of rights form prior to the time he confessed to the police officers who interrogated him that he had in fact forged the checks which were subsequently offered by the State in evidence. The stipulation of facts agreed to by the appellant amounted to an admission of his guilt to each of the forged endorsements on each of the checks. Under the stipulation of facts the lower court could find no other verdict than that the appellant was guilty as charged under each forgery indictment.

## II

Appellant's second contention is that the trial court committed error in allowing the prosecuting witness to testify. He contends that the prosecuting witness did not have the mental facilities to observe and describe the facts pertaining to the appellant's case.

The rule is well established in this State that the legal capacity of children to testify is within the sound discretion of the trial court. *Horsey v. State*, 225 Md. 80; *Robert v. State*, 220 Md. 159; *Saldiveri v. State*, 217 Md. 412; *Reckard v. State*, 2 Md. App. 312; *Rodgers v. State*, 4 Md. App. 407.

The prosecuting witness was a twelve year old boy and on direct examination, in which he testified to the facts as he recalled them, no question was raised as to his competency. However, on cross-examination, he experienced difficulty in testifying and the trial court sought to determine what was causing him difficulty and to find out what was his real problem. At the conclusion of the witness's testimony, the appellant moved to strike his testimony on the ground that he was not qualified as a competent witness, in that he did not know what it meant to tell the truth. The trial court in a careful summation of his testimony came to the conclusion that the witness was undergoing some emotional strain which amounted to an emotional blockage. However, the trial judge concluded that since the witness knew the meaning of an oath, he knew what it meant to tell the truth. He allowed the witness's testimony to stand and denied appellant's motion that the witness's testimony be not accepted. We find that the lower court did not abuse its discretion in allowing the testimony of the witness to stand.

## III

Appellant next complains that the lower court erred in directing the State's Attorney to confer with the prosecuting witness during the course of cross-examination by counsel for appellant because of the apparent hesitancy of the witness in answering basic questions. There had

been no question as to the testimony of the witness on direct examination prior to the noon recess. After the noon recess and when the witness resumed his testimony under cross-examination, he began to experience difficulty in testifying and in some instances refused to answer simple questions. The trial judge under the belief that someone may have gotten to the witness during the noon recess declared a recess and directed the State's Attorney to talk with the witness to ascertain what was bothering him. An objection was noted by appellant's counsel, which was overruled. After the State's Attorney had talked with the witness and before court was resumed, counsel were called to the judge's chambers where the court dictated for the record the following memorandum:

> "THE COURT: The record will indicate during the course of cross-examination of the witness there were long periods of hesitancy in the answering of simple questions. It occurred to me that during the noon recess somebody had talked with the witness, perhaps gotten the message to him that was disturbing him. I, therefore, took a recess and directed the State's Attorney to talk with him and try to find out the reason for the hesitancy. The State's Attorney did not discuss his testimony with him but merely endeavored to find out from him and from other witnesses because of the witness' present apparent attitude. The only thing that developed was what the boy said in court, which was to the effect he didn't like anybody hollering at him. According to the State's Attorney he excluded any questions I asked him but related it to Mr. Stern's questions. The fact of the matter is Mr. Stern's questions were not asked in a belligerent voice or in my opinion, even a loud tone of voice. His voice was no louder than it should have been in order to be heard by everybody. In any event, this seems to be the sit-

uation. As this memorandum is being dictated in chambers during the recess, do you want to add anything with respect to what you said to him?"

After a short discussion the court stated that he would resume the case and the witness was returned to the witness stand and appellant proceeded with cross-examination.

Appellant argues that by allowing the State's Attorney to talk with the witness while still under examination the court violated Maryland Rule 753 relating to sequestration of witnesses, which requires reversal. We are unable to agree. Under the circumstances of this case we find no violation of the rule against sequestration. Before allowing the witness to resume his testimony the trial judge satisfied himself that the State's Attorney had in no way discussed the witness's testimony with the witness but had merely sought to ascertain what, if anything, was bothering him in his testimony. Appellant's trial counsel was fully aware of what had been discussed and resumed his cross-examination without further objection. There was no suggestion or proffer of evidence by appellant's counsel to indicate that the State's Attorney in any way discussed the testimony of the witness with the witness during the recess and before the trial was resumed or in any way prejudiced appellant in following the court's directive to inquire of the witness concerning his reluctance to testify before the court; nor did he complain at trial that the sequestration rule had been violated. Moreover, it is apparent from the record that there was no prejudice to appellant since there was no change in the witness's testimony after the trial resumed.

In the instant case the record discloses that Rule 753 relating to the sequestration of witnesses was fully complied with throughout the trial, save as to the question here raised. The purpose of the rule is to prevent prejudice, and its essential purpose is to prevent one prospective witness from being taught by hearing another wit-

ness's testimony and its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony. *Hill v. State,* 9 Md. App. 65; *Hurley v. State,* 6 Md. App. 348. Even had the rule been violated the failure to comply with Rule 753 does not constitute reversible error *per se,* and it is within the sound discretion of the trial judge to determine whether to admit the testimony of the witness where there has been a violation of the exclusion order. *Hurley v. State, supra,* p. 352.

The rule is well established that the widest discretion has been given trial courts in the conduct of trials and this discretion should not be disturbed unless it is clearly abused. *Plank v. Summers,* 203 Md. 552; *Holtz v. State,* 1 Md. App. 358. Here we find no abuse of discretion on the part of the trial judge or prejudice to the appellant.

## IV

Appellant next contends that the lower court erred in failing to rule upon his motion for judgment of acquittal prior to a finding of guilty upon the various indictments. According to the record, the State had concluded its case with the exception of one witness whose testimony would not be available until two days later. Defense counsel wished to make a motion for judgment of acquittal at this time, but agreed to proceed with his witnesses with the understanding that the court would reserve ruling on the motion until the conclusion of the testimony of this last State's witness. The defense then proceeded to put on its case, after which the State's one remaining witness testified. At the conclusion of all the testimony, defense counsel reminded the trial judge of his earlier motion and moved for a judgment of acquittal on all the evidence. The trial judge then stated: "That works into the general discussion of the whole question, so I'll reserve on your motion," after which the court heard final arguments by both the State's Attorney and counsel for the defendant. Following final argument, the trial judge proceeded to give a careful and detailed analysis of all the

evidence and his reasons for arriving at a verdict of guilty as to the first count of each indictment.

Prior to imposing sentence he ordered a complete presentence investigation. Following the presentence investigation and at the time sentence was imposed, full opportunity was given the defendant and his trial counsel to make any statement prior to imposition of sentence. No mention was made at this time or prior thereto as to any failure on the part of the trial judge to rule on the defendant's motion for judgment of acquittal.

While counsel for appellant below preserved his motion for judgment of acquittal, we are of the opinion that the lower court ruled on the motions for judgment of acquittal in reviewing the evidence and subsequently rendering verdicts of guilty under the indictments before the court. At best his failure to rule directly on appellant's motions was harmless error. *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824; *Lamar v. State*, 5 Md. App. 594; *Metallo v. State*, 10 Md. App. 76. It was a court trial and the trial judge carefully analyzed the evidence before arriving at his verdicts.

## V

Appellant's final contention is that the lower court committed error by refusing to give him credit for the time he was in custody prior to trial.

Appellant was taken into custody on March 13, 1969 and was in custody from that date until sentence was imposed on January 16, 1970. He received the maximum sentence under each indictment, all sentences to begin as of January 16, 1970 with no allowance for time spent in jail pending trial and prior to sentencing.

In *Williams v. State*, 2 Md. App. 170, 176-77, we held that we knew of no law requiring a sentencing judge to give credit for time spent in jail pending a trial and prior to sentencing.

In *Reeves v. State*, 3 Md. App. 195, we held that Reeves was entitled to credit on his second sentence for prison time already served in his original sentence, as otherwise

the second sentence would exceed the maximum permitted by law. *Reeves* reaffirmed the *Williams'* holding as appropriate under the "circumstances of that case." 3 Md. App. at 204.

In *Jenkins v. Warden,* 4 Md. App. 629, we reaffirmed *Reeves* and held that by giving no credit for the time served under Jenkins' first sentence, the lower court, in effect, imposed a sentence which exceeded the maximum of 18 years permitted and that the 18 year sentence must date from April 6, 1964, the date of his first sentence. We further held, however, in *Jenkins* that Jenkins was not entitled to credit for the time spent in jail from the date of his arrest February 4, 1963 to the date of his first sentence April 6, 1964, reaffirming our holding in *Williams.*

Since our decisions in *Williams v. State, supra; Reeves v. State, supra;* and *Jenkins v. Warden, supra,* the United States Fourth Circuit Court of Appeals has decided the case of *Wright v. Maryland,* 429 F. 2d 1101 (dec. June 23, 1970).

Wright was arrested December 18, 1964 and charged with murder. On January 31, 1967 he was convicted of murder in the second degree and sentenced to 18 years, the maximum provided by Maryland at that time. The trial judge refused to credit the time Wright spent in pretrial custody against his sentence. Wright appealed to the Maryland Court of Special Appeals on this issue, but on December 20, 1967 we affirmed the trial judge's denial of credit. *Wright v. State,* No. 40 Sept. Term 1967 (unreported).[1] The Maryland Court of Appeals denied *certiorari* on April 22, 1968.

Wright filed a federal petition for *habeas corpus* on May 1, 1968 in the United States District Court for the District of Maryland. Wright asserted that unless Maryland gives him credit for the time he spent in pretrial custody, it is effectively imposing a sentence greater than the maximum allowed by State law.

---

1. "Much of the time between arrest and trial was consumed by physical and mental examinations made on behalf of Wright."

The District Court denied Wright's petition and Wright appealed the District Court's decision to the Fourth Circuit Court of Appeals.

The Fourth Circuit Court of Appeals reversed the District Court and on remand ordered the District Court to enter an order affording Wright a reasonable opportunity to seek relief under the Maryland Post Conviction Procedure Act for determination of whether he must, under *North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969), be given credit for time spent in jail prior to his conviction.

In its opinion the Court pointed out that Wright's contention "arguably violates the constitution in two ways. First, it may constitute multiple punishment for a single offense, thereby, offending the double jeopardy clause of the fifth amendment, which is enforcible against the States through the due process clause of the fourteenth amendment. See *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969). Secondly, it may be an unjustifiable conditioning of Wright's pretrial prerogative to challenge his first indictment and explore an insanity defense; if so, the unreasonable state condition violates the due process clause of the fourteenth amendment. See *North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969)."

The Court then went on to point out "[i]n *North Carolina v. Pearce, supra,* the Supreme Court held that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' *in imposing sentence upon a new conviction for the same offense.* (Emphasis added). 395 U. S. 718-719, 89 S. Ct. 2077." After stating that Wright clearly raises constitutional questions under the *Pearce* decision, the Court went on to point out that "although the constitutional issues in Wright's case are substantial, the Maryland appellate courts have had no opportunity to consider them in the light of *Pearce.*" In a footnote the Court pointed out: "The Maryland Court

of Special Appeals filed its opinion on April 22, 1968. *Pearce* was not decided until June 23, 1969. We have found no case decided subsequent to *Pearce* in which the Maryland courts have considered issues similar or identical to the ones before us here."

For these reasons the Court decided that the case should be remanded back to the District Court to enter an order affording Wright a reasonable opportunity to seek relief under the Maryland Post Conviction Procedure Act and thereby afford Maryland an opportunity to determine whether Wright must under *North Carolina v. Pearce, supra,* be given credit for time spent in jail.

We have carefully considered the question involved and have concluded without regard to *Pearce* that in setting a maximum sentence under the statute for a crime, it was the intent of the legislature that such maximum sentence as set out in the statute shall not exceed the statutory maximum including the time spent in prison prior to sentence. Our holding is confined strictly to those cases where the maximum sentence is imposed. To the extent that our holding here is inconsistent with our holdings in *Williams v. State, supra; Reeves v. State, supra;* and *Jenkins v. Warden, supra,* we depart therefrom.

In the instant cases the lower court imposed the maximum sentence in each case, except No. 2388.[2] The first three sentences are consecutive sentences and the next four sentences are concurrent sentences. Under Indictment No. 2385 appellant was convicted of sodomy and was given the maximum sentence of 10 years to begin January 16, 1970, the date sentence was imposed. Under Indictment No. 2386 appellant was convicted of kidnapping and was given the maximum sentence of 30 years, consecutive with the sentence imposed in No. 2385. In Indictment No. 2387 appellant was convicted of forgery and was given the maximum sentence of 10 years, consecutive with the sentence imposed in No. 2386; under Indict-

---

2. Under Indictment No. 2388 appellant was convicted of possession of barbiturates and a sentence of one year was imposed to run concurrently with the sentence imposed in No. 2387.

ments Nos. 2388, 3259, 3260 and 3261 the sentences imposed were to run concurrently with the sentence imposed under Indictment No. 2387. So in these cases by giving no credit for the time spent in prison prior to trial the lower court imposed sentences which exceeded the maximum permitted.

We hold that the 10 year sentence imposed under Indictment No. 2385 must date from March 13, 1969, the date appellant was imprisoned. Since the sentences imposed in Indictments Nos. 2386 and 2387 were consecutive and the sentences imposed in Indictments Nos. 2388, 3259, 3260 and 3261 were concurrent, they will be adjusted accordingly.

> *Judgments affirmed; case remanded for amendment of sentences in accordance with this opinion.*