## ANCEL JAMES HOLLAND *v.* STATE OF MARYLAND

[No. 159, September Term, 1971.]

*Decided December 16, 1971.*

The cause was argued before MURPHY, C. J., and THOMPSON and CARTER, JJ.

*John D. Hackett,* with whom was *Donald Daneman* on the brief, for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ancel James Holland, the appellant, was convicted of the possession of heroin and of conducting a nuisance house at 1030 North Gilmore Street in the City of Baltimore. He was also convicted of possession of heroin and conducting a nuisance house at 1130 North Gilmore Street. He was sentenced by Judge Albert L. Sklar, pre-

siding with a jury in the Criminal Court of Baltimore, to a total term of fifteen years, consecutive to a term then being served. Contentions on appeal concern the validity of a search warrant; the rulings of the court as to the sequestration of witnesses; the denial of a motion for mistrial; the sufficiency of the evidence and the alleged failure to give credit for time in jail prior to sentencing. Facts necessary for the disposition of the questions raised will be presented in the discussion of each.

## I. The Search Warrant

Appellant alleges the affidavit in question failed to meet the requirements of *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, as discussed by this Court in *Dawson v. State,* 11 Md. App. 694, 276 A. 2d 680, in that the affidavit failed to show why the various informers' statements should be credited.

The affidavit recited that the officer executing it had received information from a named informant, one Horace Fletcher of 1222 Stricker Street, Baltimore, who was then incarcerated in the Baltimore City Jail for five narcotics violations. The affidavit, executed on September 27, 1969, further recited Mr. Fletcher had told the affiant that the appellant, and one Phillip Bernard Kane, had contracted for the murder of Sergeant Gilbert Derrenberger because the latter was making too many raids and narcotics arrests at houses operated by the two in the Western Police District of Baltimore City. Specific names, dates and places were given and based at least partly on Mr. Fletcher's testimony, the Grand Jury of Baltimore City, indicted the two for conspiracy to murder. The affidavit further recited that Mr. Fletcher stated he sold drugs for the appellant at 1301 North Stricker Street and the affiant knew Fletcher was arrested during a March 28 raid of that location. During the past 9 months and as late as August 25, 1969, Fletcher had observed the appellant cutting and capping drugs at the home of his sister, Edna Holland, located at 1030

North Gilmore Street and that the appellant lived with his mother at 1130 North Gilmore Street and regularly kept drugs at that location. That Mr. Fletcher had regularly observed the appellant cutting and capping narcotics at each of seven described locations including 1030 N. Gilmore Street and 1130 N. Gilmore Street.

A "First Informant" who had previously given information which resulted in the seizure of prohibited drugs at 1301 North Stricker Street, stated that the operation was conducted by the appellant. The affidavit continued that, "Seventh Informant", who over the two preceding years had given information which resulted in two homicide and two narcotics convictions, stated to Assistant State's Attorney Stewart, that from repeated personal observations during that period from April to August 1969, he knew that appellant sold large quantities of codeine based cough syrup as well as hard narcotics in the area of Laurens and Stricker Streets. That "Eighth and Ninth Informants" had furnished Mr. Stewart with essentially the same information, and that they were considered to be reliable because their information, concerning respectively, thirty-one and seventeen known narcotics distributors, corresponded exactly with information received from other individuals whose information had resulted in arrests and convictions. That a police officer had on several occasions during the past ten days observed the appellant entering and exiting 1130 North Gilmore and 1030 North Gilmore. The affiant, Sergeant Salvatore Carona, had fifteen years of experience with the Baltimore City Police Department, having been assigned to the Organized Crime Division of the State's Attorney's Office, and had completed a three day seminar on dangerous drugs conducted by the Federal Bureau of Narcotics. He further recited that experience during a current series of approximately 100 narcotics raids by the members of the Organized Crime Division of the State's Attorney's Office, had demonstrated consistently, that narcotics violators of the appellant's type, with few exceptions, regularly kept prohibited drugs secreted at

various locations including particularly residences of friends, relatives and co-conspirators.

At the outset of our discussion, we point out that in the case of *United States v. Harris*, 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723, Mr. Chief Justice Burger's statement that a police officer's personal knowledge of a suspect's background and the fact that an informant's declaration was against his own criminal interest, were factors to be considered in determination of reliability of an informant's information, may have undercut the more rigid rules set forth in *Aguilar* and *Spinelli*. We note that only four justices agreed that each of these factors could be of value in determining the reliability of a first-time informant. Although both of these elements are present in the instant case, we need not rely on either of them to sustain the validity of the warrant.

The trial judge sustained the warrant primarily on the basis that the great number of details furnished therein was sufficient to credit the information furnished. *Dawson v. State*, 11 Md. App. 699, 703, 276 A. 2d 680. In addition, the major informant in this case, was not an unnamed informant and that too gives additional basis to credit the information. *Dawson v. State, supra*. We point out various other factors which support the proposition that the named informant's information should be credited: (1) the Grand Jury had apparently accepted his testimony in indicting the appellant and Phillip Kane for conspiracy to murder; (2) a "First Informant" who had told the police that the apartment at 1301 N. Stricker Street was operated by the appellant for the sale of prohibited drugs had resulted in finding drugs at that address; (3) a "Seventh Informant" who had previously furnished information resulting in arrests of 26 persons (two of whom had already been convicted), stated that the appellant sold large quantities of narcotics in the area of Laurens and Stricker Streets which was a block or two away from 1030 and 1130 North Gilmore Street; and (4) the "Eighth" and "Ninth Infor-

mants" who furnished essentially the same information, were reliable because their information in other cases corresponded with that received from other known to be reliable informants.

The minute detail of Fletcher's observations are sufficient to show that he had first-hand knowledge of the facts whereof he spoke; thus, the only question we have to decide under the *Aguilar* and *Spinelli* two pronged test, is credibility of the informant. We hold the affidavit sufficient to show the reliability of the informant. There is no question that the observations, if credited, were sufficient to show probable cause.

We note in passing, the identical warrant involved in the instant case was upheld in *Kane v. State,* 12 Md. App. 466, 475, 280 A. 2d 9, as to other persons and locations. In that case we disposed of the contention that the warrant was overbroad because it authorized the seizure of too many items.

The warrant also authorized a search of the 1967 cream colored Mercury hereinafter referred to, but the validity of the warrant insofar as the search of the car is concerned is not separately challenged, so we therefore, have not considered that question as a separate issue.

## II. Prejudice by Reason of Introduction of the Warrant and the Supporting Affidavit

Appellant claims that the trial judge was prejudiced because the affidavit contained information concerning other possible charges. He refers particularly to the murder conspiracy allegations we have mentioned earlier. Inasmuch as we have found that the return of a Grand Jury indictment, based at least in part on the testimony of Fletcher, supported his reliability to some degree, the relevance of that portion of the affidavit is readily apparent. The warrant was not presented to the jury. Even if the reference to the murder conspiracy were not relevant, we could not assume its presence would prejudice a member of the judiciary whose train-

ing and experience place him beyond the influence of such prejudice. See *State v. Babb,* 258 Md. 547, 551, 267 A. 2d 190, quoting with approval *Gunther v. State,* 4 Md. App. 181, 241 A. 2d 907.

### III. Sufficiency of the Evidence

Appellant contends the evidence was insufficient to support his convictions for possession and control of heroin and maintaining nuisance houses at 1030 and 1130 North Gilmore Street.

As to 1030 North Gilmore Street, when the search warrant was served the police officers found 604 capsules containing a white powder later identified as heroin and approximately 6200 empty gelatin capsules, plastic bags, wire holders, strainers, measuring spoons and a quantity of small manilla envelopes, all commonly used to dilute and package heroin for street sale. At the time of the raid, there were 4 or 5 children on the premises, but no adults. Sergeant Gilbert Derrenberger, a police officer with 17 years experience, 6 of which were in the narcotics division, testified that within three weeks immediately prior to the search he observed the appellant operating a 1967 cream colored Mercury convertible automobile which, usually in the evenings, was double parked in front of 1030 North Gilmore Street. It was appellant's practice to enter the premises, stay but a few minutes and then leave. His sister lived at this address and that for two and a half years he had seen appellant going into those premises on a routine basis. He made about 10 such observations in August and September of 1969. Officer Stanley Brown testified that through binoculars he had observed the appellant actively engaged in the selling of narcotics a block and a half away from 1030 and 1130 North Gilmore Street. These observations were made on August 4 and 5, 1969. The officer testified that it was the practice of the appellant to receive money from various people, and then "Eggy" Ross would distribute capsules containing a white powder to the pur-

chaser. The officer testified that from his experience, he believed the capsules contained heroin.

As to 1130 North Gilmore Street, the officers seized 63 capsules containing what was later chemically determined to be heroin. At the time of the raid, the 1967 cream colored Mercury parked outside of this address, was searched pursuant to the warrant. In the vehicle were found 11, one-ounce bottles of quinine hydrochloride and 12, one-pound cans of dextrose hydros or milk sugar. The officer testified that from his experience he knew these substances to be used by drug dealers as cutting agents to dilute heroin for retail sale. Although the car was registered to one Beverly Archer, 832 Mount Holly Street, it was identified by the police officers as a vehicle which appellant frequently used. Sergeant Derrenberger testified that the appellant lived at 1130 North Gilmore Street with his mother. This testimony was corroborated by Robert Stewart, an Assistant State's Attorney, and Judge Charles D. Harris who testified that on September 10, 1969, the appellant gave that as his address. The record shows that 1130 North Gilmore Street is less than two blocks from the area in which Sergeant Brown made his observations on August 5.

We have no difficulty in holding that the evidence was sufficient to create rational inferences from which a jury could be convinced beyond a reasonable doubt of the appellant's guilt of the four charges.

## IV. Other Contentions

Appellant contends the court committed reversible error by not requiring sequestered witnesses be confined to the same room. He required that they not be in the courtroom to hear other witnesses testify and directed witnesses who had testified be segregated from witnesses who had not testified. Md. Rule 753 requires that the witnesses be excluded from the courtroom. We know of no requirement that they must be kept in one location until called. The purpose of the rule is to prevent one prospective witness from being taught by the testimony

of another witness. We have even held that a witness who has violated a sequestration order may be permitted to testify within the sound discretion of the trial judge. *Jones v. State,* 11 Md. App. 468, 480, 275 A. 2d 508. We see no abuse of discretion in the instant case.

Appellant contends the trial judge erred in refusing to grant a mistrial because Officer Brown's testimony did not specifically relate to 1030 and 1130 North Gilmore Street. We think the testimony was highly relevant. The sales observed by Officer Brown were in the immediate neighborhood of these properties and the appellant was shown to frequent these addresses. For a discussion of the evidence sufficient to show that a property is used as a nuisance house see *Ward v. State,* 9 Md. App. 583, 593, 267 A. 2d 255.

Appellant also alleges that his motion for mistrial should have been granted because Judge Charles D. Harris, testifying as to the address that the appellant had given when before him "on another matter," was prejudicial because the jury could have inferred that in that other matter, appellant was a criminal defendant. Appellant made no request that the jury be instructed to disregard the testimony, but simply relied on his motion for mistrial. The granting or denial of a motion for mistrial is peculiarly within the discretion of the trial judge who is present and can observe whether prejudice, if any, has occurred. *Baldwin v. State,* 5 Md. App. 22, 28, 245 A. 2d 98. See *Wilkins and Cole v. State,* 11 Md. App. 113, at pages 127, 128, 273 A. 2d 236. We see no error.

Finally, appellant claims he was not given credit for jail time. The record shows that the trial judge ordered the sentences for these convictions to be served consecutively to another sentence on which appellant had been given jail time. The contention has no merit. Although we have held that a trial judge, imposing a maximum sentence, must give credit for jail time, *Jones v. State,* 11 Md. App. 468, 275 A. 2d 508, we are aware of

no authority that would extend the principle as far as the facts of this case. The appellant received credit on his first sentence and the maximum sentences were not imposed on the four convictions involved in the present appeal.

*Judgments affirmed.*