## IMMIS NEWKIRK *v.* STATE OF MARYLAND

[No. 210, September Term, 1971.]

*Decided January 25, 1972.*

The cause was argued before ANDERSON, MORTON and POWERS, JJ.

*Leonard A. Briscoe* for appellant.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Allen N. Horvitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Immis Newkirk, was tried before Judge J. Harold Grady in the Criminal Court of Baltimore, sitting without a jury. He was found guilty of murder in the first degree and guilty of two counts of robbery with a deadly weapon. After a motion for a new trial was denied, appellant was sentenced to life imprisonment

for the murder conviction and to two concurrent twenty year sentences for the armed robberies to run consecutively to the sentence imposed for the murder.

The record indicates that Grojnem Chlewicki was with his wife, Rose Chlewicki, in their grocery store in Baltimore City on the morning of August 15, 1969, when three men entered the store. As this was a Friday morning, there was a large amount of cash in the register to handle check cashing. Mrs. Chlewicki testified that she knew the three men since they had been in the store previously. She identified appellant by his nickname "Hawk." Mrs. Chlewicki further testified that as the three men approached the counter, appellant shot her husband with a small revolver. The three assailants then went behind the counter, one took Mr. Chlewicki's wallet and another took the money from the register. Mrs. Chlewicki described the gun as being a small revolver with one side of the handle black and the other side white. Mr. Chlewicki was dead on arrival at the hospital.

Two of the assailants were arrested shortly after the robbery and murder. The appellant was not apprehended until July 1970, almost a year later. Sgt. Robert DePaula of the Baltimore City Police Department testified that after appellant had been arrested and given his "Miranda" warnings, *Miranda v. Arizona,* 384 U. S. 436, he blurted out: "I didn't mean to shoot him, the gun went off accidentally. I want a lawyer." No questions concerning the crime were asked of appellant by the police.

The State's final witness was James Norris, a friend of appellant, who, at the time he testified, was an inmate in the Maryland House of Correction at Jessup. Norris testified that appellant and the other two assailants discussed their plans for the robbery with him approximately two weeks before its commission. Norris said that he refused to participate in the planned robbery as he knew Mrs. Chlewicki. He testified that he saw appellant approximately one-half hour after the robbery in the house of one of the assailants and also observed a large

amount of money in their possession. Norris said that he supplied the gun that was used and that he later gave it to the police. He also said that appellant told him that the shooting was an accident.

At the close of the State's case, appellant moved for a judgment of acquittal. His counsel argued generally that the State did not prove its case as to any of the indictments and, also, that the armed robbery indictments were defective because they were signed by Milton B. Allen, the State's Attorney for Baltimore City. It appears that appellant had initially retained Mr. Allen to defend him on the murder charge before Mr. Allen was elected State's Attorney. He does not question the validity of the murder indictment since it was returned prior to Mr. Allen's election and does not bear his signature. After his motion for judgment of acquittal was denied, appellant rested his case without presenting any evidence.

In this appeal, appellant argues (1) that the two armed robbery indictments were invalid because they were signed by appellant's former counsel and (2) that the evidence was insufficient to sustain the convictions.

## (1)

Md. Rule 712 (e) provides: "An indictment, except a warrant, shall be signed by the State's Attorney. An objection to an indictment on the ground that it was not signed may not be made after a plea to the merits has been entered."

Appellant does not contend that the indictments physically lacked a signature as required by the rule. He appears to argue, however, that the facsimile signature of Mr. Allen was an unauthorized signature; that since Mr. Allen had previously represented the accused, he lacked authority because of a conflict of interest [1] to affix his signature to the indictment with the result that the in-

---

1. See Opinion of The Bar Association of Baltimore City, Subcommittee on Ethics, October 21, 1970, printed in *The Daily Record*, November 14, 1970.

dictment, in point of law, actually lacked a signature as required by the Rule. If this is, in substance, the purport of his argument, we need look only to the last sentence of the Rule to find that the issue was not properly presented in this appeal because it was not raised below prior to entering a "plea to the merits."

But even if objection to the indictment had been timely entered, we would have no difficulty in finding under the circumstances of the record before us that the indictment was legally efficacious and that appellant was not denied due process by his trial on the indictment. There is no claim that Mr. Allen participated in any way in the prosecution of the case. In fact, the assistant state's attorney who presented the case to the grand jury and who conducted the trial below asserted without contradiction that Mr. Allen had no personal knowledge of the robbery indictments. Moreover, counsel for appellant was asked by the presiding judge at the hearing on the motion for a new trial, if "confidences of any nature which were confided to Mr. Allen were used by Mr. Allen's office [of State's Attorney] in the prosecution of his case?". Counsel replied: "Well, if it please the Court, I was present at the trial as you well know. I represented the Defendant at the trial. In all candor I cannot say that Mr. Horvitz, who prosecuted this case for the State had access to any information from Mr. Allen. If he did he certainly didn't use it in my presence, and I was present at every stage of the proceedings."

While there may be presented a hyper-technical question of ethics, upon which we are not called upon to pass, we think the ethics question, if it exists, is an issue personal to Mr. Allen and creates no jurisdictional, legal or constitutional impediment to his official function in the case as a constitutional officer in the judicial system of this State.

Nor do we think *Baynard v. Director,* 2 Md. App. 159, or *Charles v. State,* 4 Md. App. 110, to which appellant refers us, have any relevancy to the issue here. *Baynard*

was a post conviction proceeding in which we held that because the applicant was unrepresented by counsel at a revocation of probation hearing and the State was represented by a state's attorney who, as a private attorney, had previously represented the applicant when he was found guilty at his trial on the merits, a question of due process might be presented and we remanded the case for a full evidentiary hearing on this aspect of the revocation hearing.

In *Charles* the accused was represented at trial by an attorney who had been elected state's attorney but who had not taken the oath of office. The attorney did take the oath in the interval between the trial and the sentencing and actually represented the accused at the sentencing stage. The Attorney General conceded that it was error for the state's attorney to represent the accused at the sentencing stage but denied any error in his representation at the trial. We affirmed the judgment of conviction but in view of the Attorney General's concession, we remanded the case "for resentencing at a time when Charles is not represented by counsel, who does have conflicting responsibilities."

Thus, even if the issue were properly before us, we cannot find on this record that the appellant was denied due process of law by his trial on this indictment.

### (2)

Appellant next contends that the evidence presented was insufficient to sustain the convictions. Appellant was positively identified by the victim of the armed robbery, Mrs. Chlewicki, as one of the robbers and as the one who actually fired the gun which caused her husband's death. It is well established that a victim's positive identification of a criminal defendant is sufficient to sustain a conviction. *Jones v. State,* 11 Md. App. 468. Appellant's spontaneous admission to Sgt. DePaula after receiving his "Miranda" rights, which appellant did not object to, was part of the evidence. *Blevins v. State,* 8 Md. App. 708; *Brown v. State,* 4 Md. App. 261. Finally,

134

the testimony of Norris showed that the robbery was planned with deliberation and that appellant had possession of the murder weapon. In view of this overwhelming evidence, we cannot find that the trial judge was clearly erroneous in finding appellant guilty. Md. Rule 1086.

*Judgments affirmed.*